WILLIAM S. BURD, PLAINTIFF-RESPONDENT, v. SUSSEX MUTUAL INSURANCE COMPANY, DEFENDANT-APPELLANT.

Argued March 16, 1970—Decided July 6, 1970.

Mr. *Samuel A. Gennet* argued the cause for appellant (*Mr. William D. Bierman,* on the brief).

Mr. *Louis Winer* argued the cause for respondent.

The opinion of the court was delivered by

WEINTRAUB, C. J. The defendant carrier issued a Home Owner's policy to plaintiff, Burd, providing him with "Comprehensive Personal Liability Coverage." The ultimate issue is whether the policy covers the liability incurred by Burd when he inflicted shotgun wounds upon August D'Agostino.

The shooting incident led to the conviction of Burd for atrocious assault and battery. Thereafter D'Agostino sued Burd for damages. His complaint contained two counts. The first count charged that Burd "did maliciously and in-

tentionally fire a loaded gun at the plaintiff" and as a proximate result "of said negligence," D'Agostino was injured. The second count charged that Burd "did negligently fire a loaded gun at the plaintiff." Burd called upon the carrier to defend the suit but the carrier refused on the ground that the policy expressly excluded coverage of "bodily injury or property damage caused intentionally by or at the direction of the Insured." Burd defended through his own counsel. There was a general verdict for D'Agostino in the sum of $8,500.

Burd then brought the present action against the carrier to recover the amount of D'Agostino's judgment and also the costs incurred in defending that action. D'Agostino was named a party defendant but no relief was sought against him, and he is not a party to the present appeal. Burd and the carrier both moved for summary judgment. Burd prevailed. We certified the carrier's appeal before argument in the Appellate Division.

Burd and the carrier each contended the other was bound by the judgment in a prior proceeding. The carrier urged that Burd was bound by the finding in the criminal case that he intentionally wounded D'Agostino, while Burd contended the carrier had to defend the civil action, and having refused to do so, may not challenge the allegation therein that the injuries were "negligently" inflicted. The trial court held the carrier was thus precluded, and hence did not reach the question whether, if the carrier were free to dispute coverage, Burd would be foreclosed by the criminal conviction from questioning the carrier's position that D'Agostino was intentionally injured within the meaning of the policy exclusion from coverage.

I

The judgment against the carrier rests upon the premise that the carrier was obligated to defend the suit D'Agostino brought against the insured because the second count of the complaint alleged only "negligence" and thus on its face

was beyond the clause excluding coverage for intentional injury. Hence, the insured argues, the carrier, having foregone the opportunity to defend, is estopped to assert the injuries were intentionally caused.

The policy reads:

LIABILITY: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the company shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient.

As already stated, the policy provided, under "Special Exclusions," that this coverage did not apply "to bodily injury or property damage caused intentionally by or at the direction of the insured."

The insured says the carrier is obligated to defend an action whenever the complaint alleges a basis of liability within the covenant to pay. That is the general approach. *Ohio Casualty Ins. Co. v. Flanagin*, 44 *N. J.* 504, 514 (1965) ; *Danek v. Hommer*, 28 *N. J. Super.* 68, 77 (App. Div. 1953), aff'd o.b., 15 *N. J.* 573 (1954). But when coverage, *i. e.*, the duty to pay, depends upon a factual issue which will not be resolved by the trial of the third party's suit against the insured, the duty to defend may depend upon the actual facts and not upon the allegations in the complaint. So, for example, if a policy covered a Ford but not a Chevrolet also owned by the insured, the carrier would not be obligated to defend a third party's complaint against the insured which alleged the automobile involved was the Ford when in fact the car involved was the Chevrolet. The identity of the car, upon which coverage depends, would be irrelevant to the trial of the negligence action.

The sense of the covenant is to defend suits involving claims which the carrier would have to pay if the claimant prevailed in the action. The covenant to defend

is thus identified with the covenant to pay. That is the basis of the rule that ordinarily a carrier who defends unsuccessfully may not later deny coverage, absent an express agreement with the insured reserving a right to deny coverage. *Merchants Indemnity Corp v. Eggleston*, 37 *N. J.* 114, 127 (1962). The obligation to defend "groundless, false or fraudulent" claims does not mean that the carrier will defend claims which would be beyond the covenant to pay if the claimant prevailed. It means only that a carrier may not refuse to defend a suit on the ground that the claim asserted against the insured cannot possibly succeed because either in law or in fact there is no basis for a plaintiff's judgment. So in *Danek v. Hommer, supra,* 28 *N. J. Super.* 68, it was held that where a *per quod* action brought by the husband of an injured employee against the employer would be covered by the policy if the husband prevailed, the carrier could not refuse to defend merely because it believed, and correctly, that the husband's claim had no foundation in law. In short, the carrier's promise is to defeat or to pay a claim within the policy coverage. As the court said in *Danek,* 28 *N. J. Super.* at 80, "The stipulation for defense of actions, even if groundless, would be of little value if that obligation did not arise when a claim is stated in the pleadings, which, if sustained, would be within the protection afforded by the policy."

Here the obligation to pay a judgment obtained by the injured party depended upon whether the injuries were intentionally inflicted within the meaning of the exclusionary clause. There may be cases in which the interests of the carrier and the insured coincide so that the carrier can defend such an action with complete devotion to the insured's interest. But if the trial will leave the question of coverage unresolved so that the insured may later be called upon to pay, or if the case may be so defended by a carrier as to prejudice the insured thereafter upon the issue of coverage, the carrier should not be permitted to control the defense. That was the situation in the case at hand. Al-

though both the insurer and the insured would want D'Agostino to fail, yet if D'Agostino should succeed, as it was likely he would, the insured would want the basis to be negligence whereas the carrier would profit if the basis was an intentional injury within the policy exclusion. If plaintiff pressed his claim of negligence, the coverage issue would remain open, for the carrier could hardly insist the injuries were intentionally inflicted. Willfulness is not a defense to a charge of negligence. And if plaintiff sought a judgment for intentional hurt, the carrier could not be expected to resist that basis of liability with the fervor or fidelity of an advocate selected by the insured.

In such circumstances the carrier should not be estopped from disputing coverage because it refused to defend. On the contrary the carrier should not be permitted to assume the defense if it intends to dispute its obligation to pay a plaintiff's judgment, unless of course the insured expressly agrees to that reservation. This is not to free the carrier from its covenant to defend, but rather to translate its obligation into one to reimburse the insured if it is later adjudged that the claim was one within the policy covenant to pay. See *Satterwhite v. Stolz*, 79 *N. M.* 320, 442 *P. 2d* 810 (Ct. App. 1968).

We think the case comes within *Williams v. Bituminous Casualty Corp.*, 51 *N. J.* 146 (1968). There a workmen's compensation petition alleged the accident occurred on a date which was within the period of the policy coverage. The carrier refused to defend because it contended the accident occurred on another day, outside the period of coverage. After the employee obtained an award, the insured sued the carrier. The carrier did not dispute its insured's liability to the third-party claimant as established in the compensation proceeding, but insisted that the liability so established was beyond its coverage notwithstanding that the award in favor of the employee found the accident occurred on a date within the period of policy coverage. In holding the carrier was not precluded by the award, we said, 51 *N. J.* at 149:

Thus the coverage question does not depend upon an issue material to the litigation between the employee and the employer. The resolution of the employee's claim against the employer would not have settled the coverage problem. More than that, if the Division of Workmen's Compensation somehow accepted the issue in the trial of the employee's claim against the employer, the carrier could not have asserted its position in the employer's name, for a carrier may not so defend an insured as to leave him liable and uncovered. An attorney, engaged by the carrier to defend in the insured's name, could not ethically seek such a result. See *Szabo v. Standard Commercial Body Corp.*, 221 *App. Div.* 722, 225 *N. Y. S.* 332 (3d *Dept.* 1927). That would have been the case here since, if the carrier succeeded in its position that the critical date was the 6th, the employer would have been left with an uninsured compensation liability.

A carrier's contractual right to defend presupposes that if the defense fails, the carrier will pay. *Merchants Indemnity Corp. v. Eggleston*, 37 *N. J.* 114, 127 (1962). Hence it is settled that a carrier is estopped to deny coverage of an action it undertakes to defend. This being so, it would be arbitrary to say also that a carrier which declines to incur an estoppel by defending is equally barred from a hearing as to coverage because of a finding made in the suit it could not safely defend. Elementary fairness demands a proceeding in which the differences between the insurer and the insured may be tried. Ideally the injured claimant should be there as well, so that he may also be heard and concluded upon the issue of the carrier's liability.

▆ Whenever the carrier's position so diverges from the insured's that the carrier cannot defend the action with complete fidelity to the insured, there must be a proceeding in which the carrier and the insured, represented by counsel of their own choice, may fight out their differences. That action may, as here, follow the trial of the third party's suit against the insured. Or, unless for special reasons it would be unfair to do so, a declaratory judgment proceeding may be brought in advance of that trial by the carrier or the insured, to the end that the third-party suit may be defended by the party ultimately liable. *Ohio Casualty Insurance Co. v. Flanagin, supra,* 44 *N. J.* at 511–513.

In this connection, the insured urges the carrier should be required to seek a declaration of its duty before the trial of the injured party's suit against the insured. But that proposition could lead to unnecessary litigation, for it would compel a lawsuit whenever coverage is denied even though

the insured may silently agree with the carrier's position. We think the better course is to leave it to the contenders to decide for themselves if and when to sue. See *Condenser Service & Engineering Co., Inc. v. American Mutual Liability Ins. Co.*, 45 N. J. Super. 31 (App. Div. 1957).

The insured cites *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 54 Cal. Rptr. 104, 419 P. 2d 168 (1966), which the trial court apparently followed. *Gray* also involved a charge of intentional injury. There the insured claimed self-defense but the carrier refused to defend because the policy excluded intentional injuries from coverage. The insured defended the case, unsuccessfully. He thereupon sued for both the amount of the judgment against him and the cost of defense.

The California court held, as one ground for its decision, that the carrier was obligated to defend because under modern pleading an allegation of intentional wrong carries inherently the "potential" of a recovery upon the lesser thesis of a negligent injury. Hence, the court held, the charge on its face came within the policy coverage notwithstanding that ultimately it might be found the injury was intentionally inflicted within the meaning of the express exclusion from coverage. Thus, under Gray, the carrier must defend every such complaint, whether it be in terms of negligence or of an intentional injury, notwithstanding that in truth the claim, and a plaintiff's judgment thereon, will be beyond the covenant to pay.

The carrier in *Gray* argued that it could not properly have defended the insured since their interests were irreconcilable. The court resolved that problem by holding that in a later action between the carrier and the insured, neither the carrier nor the insured would be bound by the findings in the action against the insured. On that basis the court concluded the carrier could safely have sought the most favorable result for its insured even though its own interests ran the other way, provided, however, that the carrier had properly reserved its right to dispute coverage. On that approach, of course, the carrier was liable for the cost of

defense, whatever the outcome of the coverage issue. The court went further, and held that although the carrier could have litigated the issue of coverage in the policy suit (provided it had defended under a reservation of rights), it could not do so because it breached the covenant to defend and therefore must pay also the amount of the judgment against the insured. The approach taken by *Gray* of course differs basically from the approach adopted by our decisions already cited.

It is not clear whether the thesis of *Gray* would be applied by the California court to all coverage problems or whether it is confined to one involving an exclusion of intentional injury. The exclusion of intentional injury is somewhat unique with respect to the problem of coverage. The usual coverage issue depends upon status, time, place, identity of the instrumentality, and the like. But in the case of the exclusion of intentional injuries, the injuries, which otherwise are within the coverage, are excepted therefrom because of a state of mind, and indeed a state of mind which the injured claimant may but need not allege or prove, to prevail against the insured. Since a claimant who charges intentional injury may thus recover even though the intent to injure is not proved, his complaint, on its face, is simultaneously within both the basic covenant to pay and the intentional-injury exclusion from that coverage.

This being so, it follows that if an action charging intentional injury is wholly defeated, the insured can well argue the claim thus found to be "groundless, false or fraudulent" was for bodily injury or property damage within the covenant to pay and did not cease to be such a claim merely because the claimant added the further "groundless, false or fraudulent" allegation of an intent to injure. In that situation the carrier may fairly be required to reimburse the insured for the cost of the successful defense even though the carrier would not have had to pay the judgment if the case had gone against the insured on a finding of intentional injury. See *Lowell v. Maryland Casualty Co.*, 65 *Cal.* 2d

298, 54 *Cal. Rptr.* 116, 419 *P.* 2d 180 (Sup. Ct. 1966);
*Alm v. Hartford Fire Ins. Co., Wyo.,* 369 *P.* 2d 216 (Sup.
Ct. 1962); but see *Lawrence v. Northwest Casualty Co.,*
50 *Wash.* 2d 282, 311 *P.* 2d 670 (Sup. Ct. 1957); *Grieb v.
Citizens Casually Company of New York,* 33 *Wis.* 2d 552,
148 *N. W.* 2d 103 (Sup. Ct. 1967).

 A judgment in favor of the injured party is the
eventuality which presents the difficult problem as to whether
the carrier should be precluded because it refused to defend
a suit it believed to be within the intentional-injury exclusion.
But we see no significant difference between that problem and
the problem in *Williams v. Bituminous Casualty Corp., supra.*
The carrier's obligation to pay will probably not be re-
solved by a factual determination in the action brought by
the injured claimant against the insured, and if perchance
that factual determination is made in that suit against the
insured, he will not have been represented by counsel of
his own choice upon that critical question. And if the
coverage issue is not thus decided in the tort action, or if
a finding upon it is held not to be binding in the later
litigation over coverage, still the carrier's control over prep-
aration and trial of the tort action may well cast the die
against the insured. Hence we prefer to apply the approach
of *Williams, i. e.,* that if a carrier defends an action in the
face of a coverage issue, the carrier must pay the judgment
(unless the insured expressly agreed to a reservation of that
issue), and if the carrier does not defend the tort claim
because a plaintiff's verdict will not resolve the coverage
problem in the insured's favor or because the carrier cannot
defend with complete fidelity to the insured's sole interest,
then the carrier may be heard upon the coverage issue in a
proceeding upon the policy. And of course if the carrier
does not defend, it will have to reimburse the insured for
the cost of defense if the tort judgment is held to be within
the covenant to pay.

The cases in this area are far from harmonious. See An-
notation, 2 *A. L. R.* 3d 1238, 1249 (1965); Note, "The

Effect of Collateral Estoppel on the Assertion of Coverage Defenses," 69 *Colum. L. Rev.* 1459 (1969); Note, "The Insurer's Duty to Defend under a Liability Insurance Policy," 114 *U. Pa. L. Rev.* 734, 739 (1966). We add that *Glen Falls Insurance Co. v. American Oil Co.,* 254 *Md.* 120, 254 *A.* 2d 658 (Ct. App. 1969), deals with the problem as we do.

Our reference to the *Glen Falls* case requires a discussion of *Stefus v. London and Lancashire Indemnity Co.,* 111 *N. J. L.* 6 (E. & A. 1933), *cert.* denied, 290 *U. S.* 657, 54 *S. Ct.* 73, 78 *L. Ed.* 569 (1933). Neither party to the appeal before us referred to *Stefus* but since the Maryland opinion reveals that other courts deemed *Stefus* to bear upon the immediate problem, we should comment upon it.

In *Stefus,* the injured claimant alleged she was standing on the running board of the insured's automobile when the insured took off, throwing her to the roadway. We assume the carrier defended the action. Presumably the carrier contended plaintiff was a "trespasser" upon the running board, and hence could not recover for mere negligence. The jury found for plaintiff. Plaintiff then sued the carrier on the policy. The carrier sought to prove by the instructions given the jury that the verdict was in fact based solely on intentional injury and therefore was excluded from the policy coverage. The majority of the court held that the carrier could not go behind the pleadings in the tort action, and the pleadings not having been amended to reflect another basis of recovery, the carrier could not dispute the allegation of negligence in the complaint. A dissenting opinion was filed.

The opinions in *Stefus* do not reveal whether the carrier defended under an agreed reservation of rights. If it did not, the carrier could properly have been estopped to deny coverage under our decisions discussed above. There was a clear conflict of interest between the insurer and the insured, and, as we have said, a carrier may not, in the insured's name, so defend as to exculpate the carrier alone. If *Stefus* was meant so to hold, we agree with it. But *Stefus*

has not been understood in any of our cases to mean that a carrier who refused to defend because the dispute as to coverage would not be resolved by the verdict in the tort action or because it could not defend with fidelity to the insured, would be concluded by the allegations of the tort complaint in a hearing upon the issue of policy coverage. We note that *Stefus* was not cited in *Williams, supra,* or in the intervening cases, discussed in *Williams,* holding the carrier was not foreclosed by the allegations in the third party's action against the insured which the carrier did not defend because it could not do so safely or fairly. 51 *N. J.* at 150–151.

The carrier in the case before us was therefore entitled to try the issue whether in truth the injuries inflicted upon D'Agostino were within the exclusion and hence beyond the policy coverage. The summary judgment against the carrier must be reversed.

## II

The remaining question is whether the carrier is entitled to judgment as a matter of law because the insured was convicted on an indictment for atrocious assault and battery.

Our Rule of Evidence 63(20) provides:

> In a civil proceeding, except as otherwise provided by court order on acceptance of a plea, evidence is admissible of a final judgment against a party adjudging him guilty of an indictable offense in New Jersey or of an offense which would constitute an indictable offense if committed in this State, as against that party to prove any fact essential to sustain the judgment.

The judgment of conviction is evidential in this case. The carrier asks us to go further and to hold the judgment conclusive upon the thesis of collateral estoppel. The carrier cites *Teitelbaum Furs, Inc. v. Dominion Ins. Co.,* 58 *Cal.* 2d 601, 25 *Cal. Rptr.* 559, 375 *P.* 2d 439 (Sup. Ct. 1962); *Newman v. Larsen,* 225 *Cal. App.* 2d, 22, 36 *Cal. Rptr.* 883

(Dist. Ct. App. 1964); *Hurtt v. Stirone*, 416 *Pa*. 493, 206 *A*. 2d 624 (Sup. Ct. 1965), *cert.* denied, 381 *U. S.* 925, 85 *S. Ct.* 1561, 14 *L. Ed.* 2d 684 (1965); *In re Kravitz Estate*, 418 *Pa*. 319, 211 *A*. 2d 443 (Sup. Ct. 1965); *Eagle Star and British Dominions Ins. Co. v. Heller*, 149 *Va*. 82, 140 *S. E.* 314 (Sup. Ct. 1927); *Rosenberger v. Northwestern Mutual Life Ins. Co.*, 182 *F. Supp*. 633 (D. Kan. 1960).

█ The adoption of Rule 63(20) making a judgment of conviction "admissible" in evidence does not necessarily mean the judgment may not be conclusive in some appropriate case. The Comment in the *Report of the Supreme Court of New Jersey Committee on Evidence* (March 1963), *p*. 197, suggests the adoption of the rule would not preclude that further step. But we think it unnecessary to pursue the subject because we are satisfied that collateral estoppel would not be appropriate in the case at hand.

█ As we noted earlier, D'Agostino was made a party to this suit, although we do not know what position, if any, he took. If D'Agostino asserts a claim against the carrier, he could not be concluded by the judgment of conviction. By statute, *N. J. S. A.* 17:28–2, an injured claimant has an interest in a liability policy, *McBride v. New Amsterdam Casualty Co.*, 12 *N. J. Misc*. 181, 170 *A*. 833 (Sup. Ct. 1934), and is entitled to be heard as to coverage, *In re Estate of Gardinier*, 40 *N. J*. 261, 265 (1963). A claimant's interest is derivative of the insured's (absent a statute providing otherwise) and it is therefore reasonable to admit the judgment of conviction in his suit for whatever evidential worth it may have. But the claimant may not be estopped by a judgment entered in a proceeding begun after he was injured if he was not a party to it. Hence, D'Agostino is not precluded by the criminal conviction.

We could not say collateral estoppel would be appropriate here even as to the insured. Since the record on this appeal did not reveal the issues actually tried in the criminal case, we could not be sure the jury found facts decisive with respect to the insurance controversy.

The transcript of the criminal trial was furnished to us at our request, and although not a part of the record on this appeal, it sustains our refusal to find a collateral estoppel from the bare fact of the criminal conviction. The transcript reveals that the critical factual issue was whether the insured was so intoxicated as to be unable to form an intent to commit the atrocious assault and battery. All witnesses agreed he was drunk. D'Agostino was a close friend of the insured and his wife, and D'Agostino, together with police officers, came to the insured's home in response to the wife's telephone call for aid because her husband was roaming about the house carrying loaded weapons. It was a shotgun blast, apparently fired into the dark, which felled D'Agostino. We could not say, in the light of that transcript, that the conviction must be accepted as a finding that the injuries were intentionally inflicted within the meaning of the policy exclusion.

With respect to voluntary intoxication, the public policy considerations applicable to a criminal prosecution are not decisive as to liability insurance coverage. In criminal matters there is reason to deal cautiously with a plea of intoxication, and this to protect the innocent from attack by drunken men. So in the criminal trial, the trial judge charged the jurors that the burden was defendant's to persuade them that he was so prostrate as to be unable to form the specific criminal intent. See *State v. Tansimore,* 3 *N. J.* 516, 529 (1950); *State v. Roscus,* 16 *N. J.* 415, 426 (1954).

But other values are involved in the insurance controversy. The exclusion of intentional injury from coverage stems from a fear that an individual might be encouraged to inflict injury intentionally if he was assured against the dollar consequences. *Ruvolo v. American Casualty Co.,* 39 *N. J.* 490, 496 (1963). Pulling the other way is the public interest that the victim be compensated, and the victim's rights being derivative from the insured's, the victim is aided by the narrowest view of the policy exclusion consistent with the purpose of not encouraging an intentional

attack. And the insured, in his own right, is also entitled to the maximum protection consistent with the public purpose the exclusion is intended to serve. Accordingly, we held in *Ruvolo* (39 *N. J.* at 498) that the concept of insanity relevant to the exclusion clause of a liability policy was more expansive than the concept of insanity accepted in the defense of a criminal charge.

The burden is the carrier's to bring the case within the policy exclusion. *Morie v. N. J. Manufacturers Indemnity Ins. Co.,* 48 *N. J. Super.* 70, 76 (App. Div. 1957); *Advance Piece Dye Works, Inc. v. The Travelers Indemnity Co.,* 64 *N. J. Super.* 405, 411–413 (App. Div. 1960). Thus, as to intoxication, although in the criminal trial the jury was instructed that it was the defendant's burden to prove and persuade that he was so intoxicated as not to be able to form the intent to commit the atrocious assault and battery, here the burden would be the carrier's to prove and persuade that the injuries were within the exclusion, *i. e.,* that the insured, notwithstanding his intoxication, formed an intent to injure D'Agostino and fired the gun to that end. The allocation of the burden of persuasion being different, the criminal conviction, although admissible for whatever value a jury may give it, cannot be held to conclude the case against the insured.

The judgment is reversed and the matter remanded for further proceedings not inconsistent with this opinion.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*For affirmance*—Justice JACOBS—1.

JACOBS, J. (dissenting). The insurance carrier in effect refused to participate in the defense of the assured, either with or without reservation. The trial court found that this flat abandonment of the assured violated the broad policy

covenant to defend and subjected the carrier to responsibility for the ensuing consequences. In granting summary judgment against the carrier, the trial court accepted pertinent principles recently expressed in the full opinion of the California Supreme Court in *Gray v. Zurich Ins. Co.*, 65 *Cal.* 2d 263, 54 *Cal. Rptr.* 104, 419 *P.* 2d 168 (1966). *See also Lowell v. Maryland Casualty Company,* 65 *Cal.* 2d 298, 54 *Cal. Rptr.* 116, 419 *P.* 2d 180 (1966); *Missionaries of the Co. of Mary, Inc. v. Aetna Cas. & S. Co.,* 155 *Conn.* 104, 230 *A.* 2d 21, 26 (1967); *Boston Ins. Co. v. Maddux Well Service,* 459 *P.* 2d 777, 779–80 (*Wyo. Sup. Ct.* 1969); *cf.* Farbstein & Stillman, "Insurance for the Commission of Intentional Torts," 20 *Hastings L. J.* 1219, 1232–33 (1969); *but cf.* Keeton, "Insurance Law Rights at Variance With Policy Provisions," 83 *Harv. L. Rev.* 961, 970 n. 15( 1970). Since I believe that, under the particular circumstances presented here, application of those principles would more clearly and more justly fulfill the reasonable expectations of the assured in the purchase of his insurance policy with "Comprehensive Personal Liability Coverage" (*cf. Gerhardt v. Continental Ins. Cos.,* 48 *N. J.* 291, 297–98 (1966)), I vote to affirm.