NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5156-10T2

SPARTAN OIL COMPANY,

 Plaintiff-Appellant,

v.

NEW JERSEY PROPERTY-LIABILITY
INSURANCE GUARANTY ASSOCIATION,

 Defendant-Respondent,

and

PLANET INSURANCE COMPANY and
RELIANCE INSURANCE COMPANY,

 Defendants.

_______________________________________

 Argued February 27, 2012 - Decided June 8, 2012

 Before Judges Sabatino, Ashrafi and
 Fasciale.

 On appeal from the Superior Court of New
 Jersey, Law Division, Morris County, Docket
 No. L-2487-10.

 Kristin V. Hayes argued the cause for
 appellant (Wiley Malehorn Sirota &
 Raynes, attorneys; Ms. Hayes, of counsel
 and on the brief; Carolyn R. Conway, on the
 brief).

 Hugh P. Francis argued the cause for
 respondent (Francis & Berry, attorneys;
 Mr. Francis, of counsel; Joanna Huc, on
 the brief).

PER CURIAM

 Plaintiff Spartan Oil Company appeals from a June 3, 2011

order granting summary judgment to defendant New Jersey

Property-Liability Insurance Guaranty Association (NJPLIGA) and

dismissing plaintiff's coverage action for environmental

contamination. We affirm.

 I.

 In reviewing a grant of summary judgment, we apply the same

standard under Rule 4:46-2(c) that governs the trial court. See

Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J.

436, 445-46 (2007). We must "consider whether the competent

evidential materials presented, when viewed in the light most

favorable to the non-moving party, are sufficient to permit a

rational factfinder to resolve the alleged disputed issue in

favor of the non-moving party." Brill v. Guardian Life Ins. Co.

of Am., 142 N.J. 520, 540 (1995). Viewed most favorably to

plaintiff, the summary judgment record establishes the following

facts.

 Spartan Oil Company was in the business of delivering

heating oil. In the early 1990s, while operating under the name

Region Oil Company, it purchased and subsequently renewed a

commercial motor vehicle liability policy from Planet Insurance

 2 A-5156-10T2
Company for coverage for its fleet of delivery vehicles.

Spartan1 delivered heating oil to Plaza Cleaners in Morristown

during the coverage period of the insurance policies, March 1992

through March 1994. Its drivers pumped heating oil from its

vehicles into an external intake pipe located on the outside of

Plaza Cleaners, and the fuel traveled through an internal feed

line to an underground tank under the basement. Unbeknownst to

Spartan, the fuel line was corroded and had developed holes.

Over time, seepage from the fuel line caused serious

environmental contamination, which the owner of the property,

Morristown Associates, did not discover until 2003.

 Morristown Associates filed suit against several oil

delivery companies in 2006, and Spartan was added as a defendant

in 2009. The amended complaint of Morristown Associates alleged

liability of the heating oil companies under three theories:

violations of the Spill Compensation and Control Act, N.J.S.A.

58:10-23.11 to -23.11z; violations of the Water Pollution

Control Act, N.J.S.A. 58:10A-1 to -35; and common law

negligence. Eventually, Spartan was successful in obtaining

dismissal of the complaint by summary judgment because the

statute of limitations had run.

1
 Except when quoting from documents in the record, we will use
the designation Spartan to mean both Region Oil Company and
Spartan Oil Company.

 3 A-5156-10T2
 In January 2010, Spartan notified defendant Reliance

Insurance Company, as the successor to Planet Insurance Company,

that it was seeking reimbursement of its defense costs based on

the commercial motor vehicle liability policies it had purchased

in 1992 and 1993. Because Reliance was insolvent at that time,

defendant NJPLIGA was responsible for the policies pursuant to

the New Jersey Property-Liability Insurance Guaranty Association

Act, N.J.S.A. 17:30A-1 to -20.

 NJPLIGA denied Spartan's claim of coverage based on

subsection a(2) of the pollution exclusion provision of each

policy, which stated in relevant part that the insurance

coverage did not apply to:

 POLLUTION EXCLUSION

 . . . .

 a. "Bodily injury" or "property
 damage" arising out of the actual, alleged
 or threatened discharge, dispersal, release
 or escape of pollutants:

 1) Before the pollutants or any
 property in which the pollutants
 are contained are moved from the
 place where they are accepted by
 the "insured" for movement into or
 onto the covered "auto" or

 2) After the pollutants or any
 property in which the pollutants
 are contained are moved from the
 covered "auto" to place [sic]
 where they are finally delivered,

 4 A-5156-10T2
 disposed of or abandoned by the
 "insured".

 . . . .

 Pollutants means any solid, liquid, gaseous
 or thermal irritant or contaminant . . . .

 [Emphasis added.]

 In July 2010, Spartan filed the present action seeking a

declaratory judgment that it is entitled to reimbursement of its

defense expenses of $208,800 for the underlying action brought

by Morristown Associates. NJPLIGA filed an answer denying

liability for the defense costs. Both parties moved for summary

judgment on the question of whether there was coverage under the

policies in light of the pollution exclusion provisions.2 In an

oral decision, the trial court found that no genuine issues of

material fact existed, and it concluded that the pollution

exclusion of the policies barred coverage. The court reasoned:

 [T]his pollut[ion] occurred after the oil
 referred to as a pollutant . . . [was] moved
 from the covered auto, . . . into the pipes
 and into the system, and they were
 delivered. They were finally delivered.
 There is no way that the company could turn
 off or . . . retrieve the oil once it left
 the nozzle, and that's delivery.

 Consequently, given that policy [sic]
 direct, clear, and unambiguous meaning which

2
 Spartan had dismissed its complaint against defendants Planet
Insurance and Reliance Insurance.

 5 A-5156-10T2
 I believe it has, under these circumstances,
 there is no coverage.

By order dated June 3, 2011, the court denied Spartan’s motion

and granted NJPLIGA's motion for summary judgment and dismissal

of the cause of action. This appeal followed.

 II.

 Spartan contends the trial court erred in its "interpre-

tation of the law and the legal consequences that flow from

established facts[, which] are not entitled to any special

deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,

140 N.J. 366, 378 (1995). We agree that the interpretation of

an insurance policy upon established facts is a question of law

for the court to determine, Simonetti v. Selective Ins. Co., 372

N.J. Super. 421, 428 (App. Div. 2004), and that our standard of

review is plenary.

 A duty to defend under an insurance policy is "neither

identical nor coextensive" with the duty to indemnify the

insured against losses, and it "must be analyzed separately."

Flomerfelt v. Cardiello, 202 N.J. 432, 444 (2010). Spartan

argues that long-standing case law requires that the court

examine only the four corners of the underlying complaint to

determine whether the insurer has a duty to defend. See

Abouzaid v. Mansard Gardens Assocs., LLC, 207 N.J. 67, 79-80

(2011); Flomerfelt, supra, 202 N.J. at 444-45; Voorhees v.

 6 A-5156-10T2
Preferred Mut. Ins. Co., 128 N.J. 165, 173-174 (1992); Ohio Cas.

Ins. Co. v. Flanagin, 44 N.J. 504, 512 (1965); Danek v. Hommer,

28 N.J. Super. 68, 77 (App. Div. 1953), aff'd o.b., 15 N.J. 573

(1954).

 The Supreme Court recently restated the procedural analysis

and legal principles that govern an insurer's duty to defend:

 "[T]he complaint should be laid
 alongside the policy and a determination
 made as to whether, if the allegations are
 sustained, the insurer will be required to
 pay the resulting judgment, and in reaching
 a conclusion, doubts should be resolved in
 favor of the insured." Thus, if "the
 complaint comprehends an injury which may be
 within the policy," a duty to defend will be
 found. In other words, "potentially
 coverable" claims require a defense.

 . . . .

 [T]he potential merit of the claim is
 immaterial: the duty to defend "is not
 abrogated by the fact that the cause of
 action stated cannot be maintained against
 the insured either in law or in fact — in
 other words, because the cause is
 groundless, false or fraudulent." Moreover,
 the duty to defend remains even if the
 asserted claims are "poorly developed and
 almost sure to fail."

 [Abouzaid, supra, 207 N.J. at 79-81
 (citations omitted).]

Thus, analysis of the duty to defend emphasizes "the nature of

the claim asserted, rather than the specific details of the

incident or the litigation's possible outcome . . . ."

 7 A-5156-10T2
Flomerfelt, supra, 202 N.J. at 444. It is the nature of the

claim "that governs the insurer's obligation." Ibid. However,

"[w]here . . . the complaint excluded the potential for a

covered claim, no defense [is] warranted." Abouzaid, supra, 207

N.J. at 86.

 Spartan contends the trial court erred in looking beyond

the face of the complaint filed by Morristown Associates and

considering the underlying facts. More specifically, it argues

that "[t]he fundamental flaw in the trial court's reasoning is

that it made determinations - when the delivery was complete;

when the discharge occurred; and whether the delivery was made

correctly - not relevant to the coverage determination."

 Spartan's argument relies on an incomplete picture of the

law. At times and in particular circumstances, the Supreme

Court has condoned looking beyond a complaint to the underlying

facts alleged by the claimant. Harleysville Ins. Cos. v.

Garitta, 170 N.J. 223, 236, 238 (2001) (duty to defend wrongful

death action was assessed by looking past the complaint to the

insured's actual intent "in unique circumstance[s]" where the

"heart" of the complaint was based on "a single course of

conduct"); SL Indus., Inc. v. Am. Motorists Ins. Co., 128 N.J.

188, 198-99 (1992) (duty to defend age discrimination action was

triggered by facts disclosed in interrogatories, which insurer

 8 A-5156-10T2
could not ignore even though they were not in the pleadings);

Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98

N.J. 18, 24-25 (1984) (duty to defend negligence action required

examination of extrinsic evidence because critical fact for

coverage to apply was not relevant to underlying action and thus

was not pleaded); Burd v. Sussex Mut. Ins. Co., 56 N.J. 383,

388-89 (1970) (duty to defend atrocious assault action required

examination of facts beyond complaint when existence of coverage

required resolution of factual issue not decided by the

underlying case); Polarome Int'l, Inc. v. Greenwich Ins. Co.,

404 N.J. Super. 241, 272-277 (App. Div. 2008) (duty to defend

personal injury action required examination of facts beyond the

complaint because it was impossible for the insurer to determine

from the complaint whether exposure to insured product occurred

during the policy period), certif. denied, 199 N.J. 133 (2009).

 In Burd, supra, 56 N.J. at 388, Chief Justice Weintraub

stated: "when coverage, i.e., the duty to pay, depends upon a

factual issue which will not be resolved by the trial of the

third party's suit against the insured, the duty to defend may

depend upon the actual facts and not upon the allegations in the

complaint." Chief Justice Weintraub provided the following

illustration:

 [I]f a policy covered a Ford but not a
 Chevrolet also owned by the insured, the

 9 A-5156-10T2
 carrier would not be obligated to defend a
 third party's complaint against the insured
 which alleged the automobile involved was
 the Ford when in fact the car involved was
 the Chevrolet. The identity of the car,
 upon which coverage depends, would be
 irrelevant to the trial of the negligence
 action.

 [Ibid.]

 We must view the allegations of Morristown Associates'

amended complaint side-by-side with the terms of the insurance

policies to determine if it alleges facts requiring coverage.

If the policies are ambiguous, they will be interpreted most

favorably to Spartan to give effect to the insured's reasonable

expectation of coverage. Flomerfelt, supra, 202 N.J. at 441-43.

 The policies provided coverage for "property damage . . .

caused by an accident and resulting from the ownership,

maintenance or use of a covered auto," but they excluded

coverage for "discharge, dispersal, release or escape of

pollutants: . . . [a]fter the pollutants . . . are moved from

the covered auto to [the] place where they are finally

delivered, disposed of or abandoned by the insured." (Emphasis

added). Spartan argues that the Morristown Associates complaint

alleged negligence of Spartan "during" the delivery of heating

oil to Plaza Cleaners and, therefore, the pollution exclusion

did not apply.

 10 A-5156-10T2
 The amended complaint alleged generally that Spartan was

negligent because it "knew, or in the exercise of reasonable

care, should have known, that the improper delivery of fuel oil

created a risk of harm to the Property of [Morristown

Associates]," and that "contamination of [the] Property was

proximately caused by [Spartan's] negligence, including the

failure to use reasonable care in the delivery of fuel oil,

[and] the failure to promptly notify [Morristown Associates] of

the contamination." (Emphasis added). More specifically, the

factual allegations of the complaint stated the following in

paragraphs twelve and thirteen:

 12. On multiple occasions . . Region Oil .
 . . delivered fuel oil to an underground
 storage tank, owned by Plaza Cleaners, and
 located in the leasehold of Plaza Cleaners.

 13. On information and belief, the fill and
 vent lines to the underground storage tank
 at Plaza Cleaners were corroded. As a
 result, the fuel oil delivered by . . .
 Region Oil . . . was discharged into the
 soil and groundwater at the Property.

 [Emphasis added.]

The complaint contained no explicit allegation either that

Spartan's negligence occurred "during" delivery of the heating

oil or "after" the oil was "finally delivered." However, the

reference to "the fuel oil delivered" implied that the delivery

had already occurred.

 11 A-5156-10T2
 While the allegations of the complaint may contain some

ambiguity as to the specific time that the pollution occurred in

relation to the oil that was delivered, the policies themselves

are not ambiguous. They exclude coverage after final delivery

of the oil. In an insurance policy, an ambiguity exists when

"the phrasing of the policy is so confusing that the average

policyholder cannot make out the boundaries of coverage." Weedo

v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979). The phrasing

of the exclusion in this case is not confusing.

 An unambiguous insurance contract is interpreted in

accordance with the plain and ordinary meaning of its terms,

Voorhees, supra, 128 N.J. at 175, in light of "'the objectively

reasonable expectations of the insured,'" Nav-Its, Inc. v.

Selective Ins. Co., 183 N.J. 110, 118 (2005) (quoting Doto v.

Russo, 140 N.J. 544, 556 (1995)). Exclusions are to be

interpreted narrowly. Princeton Ins. Co. v. Chunmuang, 151 N.J.

80, 95 (1997).

 We are not aware of legal authority that explicitly defines

"delivery" in this insurance context. The policies themselves

also do not define the phrase "finally delivered." The trial

court reasonably relied on a common definition of "deliver" as

meaning to have given into another's possession. The court

stated:

 12 A-5156-10T2
 I refer to the simple definition of
 deliver. It's commonly interpreted as
 meaning, quote, "to have given into
 another's possession or keeping or surrender
 something." That's what happened here.

 Although the fuel oil discharge and the
 resulting contamination occurred while the
 fuel oil was traveling through the fill
 pipes toward the tank, it occurred after
 Spartan Oil deposited the oil from its truck
 into the heating oil system. As such,
 Spartan Oil had already surrendered the fuel
 oil in any rational meaningful and
 unambiguous way.

 Under these circumstances, the
 pollution exclusion is clearly triggered.

The trial court also found that the complaint contained no

allegation of negligence in the manner in which Spartan's

drivers delivered the oil into the intake pipe at Plaza

Cleaners. We agree with the trial court's interpretation of the

policies and its reading of the Morristown Associates complaint.

 Whether the term is "delivered" or "finally delivered," the

delivery of the oil occurred upon the fuel entering the property

and heating system of Spartan's customer, Plaza Cleaners. At

that point, Spartan no longer had possession or control of the

oil. It had been transferred into the possession of Plaza

Cleaners.

 There is no allegation in the complaint that the seepage

and contamination occurred while the oil was in possession of

Spartan and before its delivery to Plaza Cleaners. There is

 13 A-5156-10T2
also no allegation that Spartan spilled oil onto the soil and

into groundwater in the course of pumping it from its vehicle to

the intake pipe at Plaza Cleaners.3

 The policies in this case contained an exception to the

pollution exclusion for circumstances where the fuel was

discharged from the vehicle but not delivered to the place

delivery was intended. The exception stated:

 Paragraphs a. and b. of this exclusion do
 not apply if:

 1) The pollutants or any
 property in which the pollutants
 are contained are upset,
 overturned or damaged as a result
 of the maintenance or use of a
 covered "auto" and

 2) The discharge, dispersal,
 release or escape of the
 pollutants is caused directly by
 such upset, overturn or damage.

While not directly applicable to spillage from the nozzle or the

hose at the delivery point, this exception indicates that an

accidental spill from the vehicle while the oil was still in

Spartan's possession would be covered by the policy. The

exception addresses the finding of no coverage in circumstances

3
 Although outside the allegations of Morristown Associates'
complaint, expert reports were prepared in the underlying case,
and they included no contention that Spartan or any other oil
delivery companies had spilled oil onto the ground as they were
transferring the fuel from their vehicles to the intake pipe.

 14 A-5156-10T2
where the fuel is unintentionally discharged from the vehicle

and causes property damage, as occurred in A & S Fuel Oil Co.,

Inc. v. Royal Indem. Co., Inc., 279 N.J. Super. 367, 368 (App.

Div.), certif. denied, 141 N.J. 98 (1995).

 More to the point, the trial court in this case did not

conclude, as Spartan argues, that the pollution exclusion

applied simply because the fuel was discharged from the nozzle

of Spartan's truck. It was its discharge into Plaza Cleaners'

heating system that constituted final delivery and triggered the

pollution exclusion.

 The essential fact for determining insurance coverage in

this case is when delivery of the fuel oil to its final

destination occurred. That fact was not determined during the

underlying Morristown Associates litigation because the claims

against Spartan were dismissed on the statute of limitations,

not their merits. Consequently, Burd, supra, 56 N.J. at 388-89,

suggests these circumstances are appropriate for a court to look

past the express words of the underlying complaint to come to an

understanding of what the claimant actually alleged as the basis

for Spartan's liability.

 We conclude that the meaning of "finally delivered" in the

pollution exclusion is the same as the meaning of "delivered" in

the Morristown Associates complaint. The heating oil was

 15 A-5156-10T2
"finally delivered" or just "delivered" when it was placed into

the possession of the customer. That occurred when the oil

entered the customer's heating system, which included its intake

and fill lines.

 In sum, we agree with the trial court's interpretation of

the insurance policies and its understanding of the allegations

of the underlying complaint. Because Spartan had already and

finally "delivered" the oil before the contamination occurred,

the pollution exclusion applied and the insurance policies did

not cover liability for the contamination.

 Affirmed.

 16 A-5156-10T2