**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5930-17T2

JARRETT C. HYNES,

    Plaintiff-Appellant,

v.

DAVID S. GIBSON,

    Defendant-Respondent.

_____

Submitted May 28, 2020 – Decided August 14, 2020

Before Judges Suter and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. L-0165-15.

Katharine Leigh Errickson, attorney for appellant.

Lamb Kretzer, LLC, attorneys for respondent (John A. Fearns and Robert D. Kretzer, on the brief).

PER CURIAM

    Plaintiff Jarrett C. Hynes appeals from the denial of his motion for a new trial. He argues the jury verdict constituted a miscarriage of justice because the

trial court erred by charging the jury on comparative negligence and because of improper comments by defense counsel, which he claims the court's curative instructions did not remedy. Plaintiff also contends defense counsel should have been disqualified based on a non-waivable conflict of interest. For reasons that follow, we affirm the order denying a new trial, finding no miscarriage of justice.

The case arises from a road rage incident on April 16, 2013, in Flemington. Plaintiff was operating his vehicle when he changed from the right to the center lane after looking in his rearview mirror and putting on his blinker. He testified, "I didn't see any vehicles." Defendant was operating his van on the same road, going in the same direction with his wife in the passenger seat. She testified that "all of a sudden in my peripherals, I saw a car. . . . I realized the car was so incredibly close to ours that we were probably going to get in an accident. . . . And I screamed." Defendant beeped the horn, avoiding an accident, and plaintiff's vehicle pulled in front of defendant's. When plaintiff stopped at the next light, he heard screaming and saw defendant yelling. He gave defendant the middle finger. As they proceeded, defendant now was tailgating him. Plaintiff testified he "softly tapped [his] brake light and brake checked him." Defendant's wife testified plaintiff gave them the middle finger

"and was kind of doing a bit of a gyration, and it was up and down." Then, plaintiff was "on and off constant pumping of the brakes; like not just once, not just twice, but it was like a constant thing." When they reached another stop light, defendant got out of his van with a window punch and proceeded to shatter plaintiff's driver's side window. Although plaintiff saw defendant had something in his hand resembling a knife, he pushed open his car door and got out; the two men began to grapple. Plaintiff testified that defendant "lunged at me and stabbed me" with the window punch. Defendant's wife broke up the fight. Plaintiff sustained "a small puncture wound" and small cuts from the window glass. He refused medical assistance at the scene, but later went to the Hunterdon Medical Center for treatment.[1]

Plaintiff sued defendant in the Law Division in April 2015, for physical and emotional injuries, alleging intentional assault and battery (count one), negligent assault and battery (count two), and intentional or negligent assault and/or battery (counts three through seven). Plaintiff contended he developed

---

[1] Defendant was arrested and charged criminally. He pleaded guilty to third degree aggravated assault with bodily injury, N.J.S.A. 2C:12-1(b)(7), and was sentenced to a two-year term of non-custodial probation, a required mental health evaluation, and a ninety-day suspension of his driver's license, requiring medical clearance.

psoriasis and suffered from post-traumatic stress disorder (PTSD) as a result of the incident.

Defendant's answer raised as an affirmative defense that plaintiff's negligence "proximately contributed to" the incident. He was represented by privately retained counsel on the counts of the complaint alleging intentional actions and by John Fearns, Esq. (insurance counsel), appointed by his insurer, Liberty Mutual Insurance Company (Liberty Mutual), on the remaining counts of the complaint.

The jury awarded plaintiff a judgment of $5000 for pain and suffering,[2] finding defendant 52% liable for plaintiff's injuries and plaintiff 48% liable. The intentional counts of the complaint had been dismissed by motion at the close of plaintiff's case.

Plaintiff filed a motion for a new trial, alleging that errors by the trial court constituted a "manifest injustice." He contended the trial court erred by instructing the jury on comparative negligence because that instruction had not been requested by counsel nor discussed at the pre-charge conference. His

---

[2] The jury's award did not include any amount for plaintiff's alleged aggravation of a pre-existing condition.

counsel argued the case "was always intentional versus straight negligence, not comparative negligence."

The court denied the new trial motion on July 13, 2018, finding it was appropriate to give the comparative negligence charge because of the nature of the case and because comparative negligence was included as an affirmative defense in defendant's answer. Plaintiff was given the opportunity to object to the charge and did so.

The court found reference to plaintiff's DWI arrest was harmless error, which was addressed by the court's curative instruction. Also, the court considered "fair and appropriate" the manner in which it addressed defense counsel's comment about plaintiff's treating doctor's failure to appear.

The court was satisfied there was no miscarriage of justice—even if the three issues were considered together—as the "case came down to the credibility of the witnesses." Plaintiff's credibility was adversely affected because he was not consistent about when his psoriasis condition arose for the first time, and he claimed PTSD but was not treated for it. The court observed the jury apparently "believe[d] that [plaintiff] played a significant role in bringing about . . . this road rage incident by his conduct, which they determined to be negligent leading up to the confrontation at the street corner."

A-5930-17T2

On appeal, plaintiff raises the following issues:

I. SINCE A MISCARRIAGE OF JUSTICE RESULTED FROM THE TRIAL COURT IMPROPERLY CHARGING THE JURY WITH COMPARATIVE NEGLIGENCE, SUA SPONTE, AFTER THE PARTIES HAD BOTH RESTED, THE COURT SHOULD REVERSE THE TRIAL COURT'S DECISION AND GRANT THE PLAINTIFF A NEW TRIAL.

II. THE DEFENDANT'S INSURANCE ATTORNEY SHOULD HAVE BEEN DISQUALIFIED DUE TO HIS CONFLICT OF INTEREST THAT COULD NOT BE WAIVED.

III. DEFENSE COUNSEL'S COMMENTS TO PLAINITFF'S EMOTIONAL DAMAGES EXPERT ABOUT PLAINTIFF'S SIX-YEAR-OLD DWI, COMPLETELY IGNORED THE TRIAL COURT'S IN LIMINE MOTION, AND DEFENSE COUNSEL'S IMPROPER COMMENTS TO THE JURY COMMENTING ON THE REASON PLAINTIFF'S TREATING DOCTOR DID NOT TESTIFY, CONSTITUTE REVERSIBLE ERROR.

We review the denial of defendant's motion for a new trial under the same standard used by the trial court, which is, "whether there was a miscarriage of justice under the law." Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522 (2011). We do so giving "'due deference' to the trial court's 'feel of the case.'" Ibid. (quoting Jastram v. Kruse, 197 N.J. 216, 230 (2008)). "A jury verdict is entitled to considerable deference and 'should not be overthrown

6

except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice.'" Id. at 521 (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 597-98 (1977)). We must, however, make our own independent determination of whether a miscarriage of justice occurred. Carrino v. Novotny, 78 N.J. 355, 360 (1979).

Plaintiff contends the comparative negligence charge should not have been given. Even if it were appropriate, plaintiff argues for the first time on appeal, the court should have used Model Jury Charge (Civil), 7.16, "Negligence—Acts or Misconduct Are Willful, Wanton or Malicious or In Reckless Disregard Of One's Safety Or Are Intentional Acts," instead of 7.30, "Comparative Negligence—(Auto)—All Issues."

In reviewing the adequacy of the court's instructions to the jury, we must consider the charge as a whole in determining whether it was prejudicial. See State v. Figueroa, 190 N.J. 219, 246 (2007) (Rivera-Soto, J., dissenting). "[A]ppropriate and proper [jury] charges are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)). Model jury charges are often helpful to trial courts performing this

important function.  See Mogull v. CB Commercial Real Estate Grp., Inc., 162 N.J. 449, 466 (2000) (holding that instructions given in accordance with model charges, or which closely track model charges, are generally not considered erroneous).

We are satisfied there was no miscarriage of justice by giving a comparative negligence charge.  "Comparative negligence is a legislative amelioration of the perceived harshness of the common-law doctrine of contributory negligence."  Ostrowski v. Azzara, 111 N.J. 429, 436 (1988).  "A second underlying principle of the [Comparative Negligence Act] is the idea that 'every person has an obligation to exercise reasonable care for his or her own safety.  It is only fair that each person only pay for injuries he or she proximately caused.'"  Fernandes v. DAR Dev. Corp., 222 N.J. 390, 407 (2015) (quoting Waterson v. Gen. Motors Corp., 111 N.J. 238, 267 (1988)).  "A jury may consider a plaintiff's negligence only when the evidence adduced at trial suggests that the plaintiff was somehow negligent and that negligence contributed to the plaintiff's damages."  Id. at 408.

There was evidence in this case that plaintiff's conduct contributed to the incident.  Plaintiff used an offensive finger gesture toward defendant and also repeatedly stepped on his brake as defendant was near his bumper.  Plaintiff did

not stay in the car after the window was broken but exited and grappled with defendant, who plaintiff knew had a knife-like object in his hand. Defendant's affirmative defenses specifically alleged plaintiff's negligence contributed to causing the incident.

The trial court is responsible for instructing the jury on the law. See McDonough v. Jorda, 214 N.J. Super. 338, 346 (App. Div. 1986) (stating, "the trial judge must prepare a full, complete charge on all facets of the applicable law"). "The precise language of every jury instruction must be tailored by the trial judge to fit the particular fact situation and the applicable statutory or decisional law." Cavanaugh v. Skil Corp., 331 N.J. Super. 134, 160 (App. Div. 1999) (quoting Dimogerondakis v. Dimogerondakis, 197 N.J. Super. 518, 520 n.1 (Law Div. 1984)).

We are satisfied given the evidence in the case and the affirmative defense, that it was not a miscarriage of justice to instruct the jury on comparative negligence. Plaintiff had the opportunity to object to the charge and made an objection. The fact that plaintiff did not prevail does not mean there was error.

For the first time on appeal, plaintiff contends the trial court should have instructed the jury under Model Jury Charge 7.16 rather than 7.30. We need not

consider plaintiff's arguments that were not raised before the trial court. Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).  If we did, however, because this case involved a road rage incident involving two motor vehicle operators and included standard allegations involving personal injuries, we think it was not an abuse of discretion by the trial court to use Model Jury Charge 7.30.  Model Jury Charge 7.30 was more comprehensive and Model Jury Charge 7.16 arguably might have created confusion by its reference to willful and malicious or intentional conduct once the court dismissed the intentional causes of action.

Plaintiff argues defendant's insurance counsel and defendant have an irreconcilable conflict of interest which requires disqualification of counsel.  He contends defendant's waiver did not satisfy the holdings in Burd v. Sussex Mutual Insurance Company, 56 N.J. 383 (1970).

Liberty was proceeding under a reservation of rights because plaintiff's lawsuit against defendant contained claims alleging both negligent and intentional conduct.  Plaintiff's motion prior to trial to disqualify insurance counsel was denied on October 27, 2017, because the court found that any conflict was waived.  Defendant submitted a certification, in opposition to the motion stating he "conferred with personal counsel . . . and [his] assigned

defense counsel, John A. Fearns, Esq., . . . and ha[s] been fully advised of the alleged conflict argument presented to the Court. It is my desire to have Mr. Fearns continue as my counsel throughout the balance of this case."

Plaintiff's notice of appeal does not list the October 27, 2017 order that denied his motion to disqualify plaintiff's insurance counsel.[3] "[I]t is only the judgments or orders or parts thereof designated in the notice of appeal which are subject to the appeal process and review." Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 461-62 (App. Div. 2002) (quoting Pressler, Current N.J. Court Rules, cmt. 6 on R. 2:5–1(f)(3)(i) (2002)). "The appellant should explicitly designate all judgments, orders and issues on appeal in order to assure preservation of their rights on appeal." Id. at 461 n.1. Because plaintiff did not appeal the October 27, 2017 order, the issue of disqualification is not before us.

Even if it were, the trial court had ample basis to deny the motion based on defendant's certification. Defendant submitted a certification to the court explaining he wanted Fearns to continue as his counsel, and was fully advised about the conflict argument. Burd recognized an insured could waive a conflict. 56 N.J. at 389-90. "[T]he carrier should not be permitted to assume the defense if it intends to dispute its obligation to pay a plaintiff's judgment, unless of

---

[3] The issue is referenced in the Case Information Statement but not the order.

course the insured expressly agrees to that reservation." Id. at 390. Plaintiff argues it was Liberty's reservation that created the conflict of interest, but defendant's reference to "conflict arguments" in his certification was a sufficient basis for the judge to find consent to representation in this case. We conclude that plaintiff's further arguments on this point are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Plaintiff argues the trial court erred by denying him a new trial based on a question by defense counsel on cross-examination that referenced a 2007 DWI arrest, and a comment in his summation about the absence of plaintiff's treating doctor. We disagree.

The trial court granted plaintiff's unopposed in limine motion to bar reference at trial to plaintiff's prior DWI arrest. Defense counsel's cross-examined plaintiff's psychological expert Dr. Maureen Santina about specific stressors plaintiff experienced earlier. When she requested clarification, defendant's attorney stated, "[a]n arrest for DWI." Plaintiff's counsel objected based on the in limine ruling and because she claimed to have reminded counsel not to mention the DWI charges. Following side-bar, the judge instructed the jury:

> Ladies and gentlemen, you heard a reference . . . to [plaintiff] having an arrest for driving under the

influence, DUI. That was back in 2007 and it really has – other than the fact that it was referenced in . . . the doctor's report as part of some other stressors that had to do with . . . some alcohol problems, which you had already heard about as well, the fact that he had an arrest really has no bearing on this lawsuit. And you should disregard the reference to the DUI arrest, okay?

Then, during summation, defense counsel commented on the absence of testimony from plaintiff's treating dermatologist. He argued the jury had not heard from plaintiff's treating dermatologist "because she would testify consistently with the dermatological expert that you heard from [defendant's dermatological expert], . . . that there's no evidence in this case - - ." Plaintiff's counsel objected before the sentence was finished. After a lengthy side-bar, the court gave a curative instruction.

Now, the objection was made mid-sentence by . . . [plaintiff's counsel] and so [defense counsel] really never did complete the statement he was about to make about [plaintiff's treating dermatologist's] failure to appear. So I'm going to instruct you to disregard anything you recall about what was said about [the dermatologist's] failure to appear.

"[W]hen weighing the effectiveness of curative instructions, a reviewing court should give equal deference to the determination of the trial court. The adequacy of a curative instruction necessarily focuses on the capacity of the offending evidence to lead to a verdict that could not otherwise be justly

13

reached." State v. Winter, 96 N.J. 640, 647 (1984). The test is whether the error was "clearly capable of producing an unjust result." State v. Daniels, 182 N.J. 80, 95 (2004) (quoting R. 2:10-2).

Attorneys are afforded "broad latitude in summation[s]." Bender v. Adelson, 187 N.J. 411, 431 (2006) (quoting Colucci v. Oppenheim, 326 N.J. Super 166, 177 (App. Div. 1999)). While, the "cumulative effect" of inappropriate comments can result in a miscarriage of justice, Geler v. Akawie, 358 N.J. Super. 437, 468 (App. Div. 2003) "[f]leeting comments, even if improper, may not warrant a new trial, particularly when the verdict is fair." Jackowitz v. Lang, 408 N.J. Super. 495, 505 (App. Div. 2009).

The trial court did not err in denying a new trial on the basis of these comments. They were isolated and followed by immediate curative instructions. Plaintiff did not object to the curative instructions that were given or request a mistrial. In both instances, the court instructed the jury not to consider the question or comment. It is presumed the jurors followed these instructions. State v. Loftin, 146 N.J. 295, 390 (1996). The curative instructions were sufficiently timely and substantively adequate.

Plaintiff is dissatisfied with the verdict and bootstraps from this that the jury was swayed by passion or prejudice. However, there was ample evidence

to support the verdict based on plaintiff's inconsistent testimony about his psoriasis condition and based on his conduct during the incident. With respect to the summation comment, it was incomplete and the court gave an immediate curative instruction. On this record, the errors cited did not constitute manifest injustice warranting a new trial particularly in light of the appropriate and timely curative instructions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5930-17T2