SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Crystal Point Condominium Association, Inc. v. Kinsale Insurance Company**
**(A-76-20) (085606)**

**Argued January 3, 2022 -- Decided July 18, 2022**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court considers whether plaintiff Crystal Point Condominium Association, Inc., which has obtained default judgments against two entities for construction defect claims, may assert claims against defendant Kinsale Insurance Company, alleged to have insured those entities, under the Direct Action Statute, N.J.S.A. 17:28-2. The Court also considers the effect of the provisions in each policy mandating binding arbitration of disputes between Kinsale and its insureds.

It is undisputed that Kinsale issued policies that provided insurance coverage to Nacamuli Associates LLC, a structural engineering firm. Crystal Point alleges that Kinsale also provided insurance coverage to Hawke Inspections and Testing LLC, a construction inspection company. The relevant policies both contained an arbitration agreement providing in part that "[a]ll disputes over coverage or any rights afforded under this Policy . . . shall be submitted to binding Arbitration."

Crystal Point manages the common elements of a building in Jersey City. After discovering what it alleges to be construction defects in the building, it filed an action against the contractors that it contended were responsible for those defects, including Nacamuli and Hawke. Crystal Point sought and obtained default judgments and writs of execution against Nacamuli and Hawke.

Crystal Point filed a declaratory judgment action against Kinsale, alleging that it was entitled to recover the amounts owed by Nacamuli and Hawke under the insurance policies issued by Kinsale. Kinsale asserted that Crystal Point's claims were subject to binding arbitration in accordance with the insurance policies. Kinsale argued that the Direct Action Statute did not apply because Crystal Point had not demonstrated that either Nacamuli or Hawke was insolvent or bankrupt. In the alternative, Kinsale contended that even if the statute were to apply, it would not preclude enforcement of the arbitration provisions in the policies. Crystal Point opposed the motion. It asserted that the arbitration provisions did not apply to its claims and that the Direct Action Statute precluded enforcement of those provisions.

1

The trial court granted Kinsale's motion to compel arbitration. The court viewed the Direct Action Statute to be inapplicable because there was no evidence in the record before it that either Nacamuli or Hawke was insolvent or bankrupt.

The Appellate Division granted Crystal Point's motion to supplement the record with Affidavits of Service by Union County Sheriff's Officers indicating that they were unable to serve the writs of execution on Nacamuli or Hawke because, in each case, the "[c]ompany does not exist at this address." The appellate court reversed the trial court's judgment, finding the evidence that the writs of execution were unsatisfied met the Direct Action Statute's requirement that the claimant present proof of the insured's insolvency or bankruptcy and determining that the Direct Action Statute authorized Crystal Point's claims against Kinsale. 466 N.J. Super. 471, 480-82 (App. Div. 2021). The Appellate Division concluded that the arbitration clause in Kinsale's insurance policies did not warrant the arbitration of Crystal Point's claims, so it reinstated the complaint and remanded for further proceedings. Id. at 485-87.

The Court granted certification. 248 N.J. 10 (2021).

**HELD:** Crystal Point may assert direct claims against Kinsale pursuant to the Direct Action Statute in the setting of this case. Based on the plain language of N.J.S.A. 17:28-2, however, Crystal Point's claims against Kinsale are derivative claims, and are thus subject to the terms of the insurance policies at issue, including the provision in each policy mandating binding arbitration of disputes between Kinsale and its insureds. Crystal Point's claims against Kinsale are therefore subject to arbitration.

1. The Legislature enacted the Direct Action Statute in 1924, and the statute has not been amended since 1931. The statute mandates the inclusion of specific policy language in insurance policies both "against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable" and "against loss or damage to property caused by animals or by any vehicle drawn, propelled or operated by any motive power, and for which loss or damage the person insured is liable." N.J.S.A. 17:28-2. The statute allows a victim to directly pursue an insurer without a need for the insured's cooperation if certain requirements are met: first, injured parties have no rights under the policy until "execution against the insured is returned unsatisfied . . . because of the insolvency or bankruptcy" of the person insured; second, any claim brought under the Direct Action Statute is a claim "under the terms of the policy." Ibid. In actions brought pursuant to policy language mandated by the Direct Action Statute, the judgment creditor's rights "are purely derivative. He stands in the shoes of the assured; and he sues in the right of the insured." Dransfield v. Citizens Cas. Co. of N.Y., 5 N.J. 190, 194 (1950). (pp. 14-18)

2

2.  The Court rejects the argument that the Direct Action Statute applies only to claims arising from "loss or damage to property caused by animals or by any vehicle drawn." N.J.S.A. 17:28-2. By its plain terms, the statute applies to either (1) coverage for claims "against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable"; or (2) coverage for claims "against loss or damage to property caused by animals or by any vehicle drawn, propelled or operated by any motive power, and for which loss or damage the person insured is liable." Ibid. Nothing in the statutory text suggests legislative intent to limit the statute's reach to the second category of claims, nor is there any indication in the case law applying the Direct Action Statute that the statute applies only to such claims. This case is clearly an action by a judgment creditor seeking the proceeds of insurance policies for claims arising from "loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable." N.J.S.A. 17:28-2. Accordingly, the Direct Action Statute governs this appeal. (pp. 18-20)

3.  Turning to the Direct Action Statute's proof of insolvency requirement, the Court notes that the trial court properly concluded, based on the record before it, that Crystal Point had not presented prima facie evidence of the insolvency of Nacamuli or Hawke. The Court concurs with the Appellate Division that the supplemented appellate record included such prima facie evidence -- a showing that the writs of execution were returned unsatisfied. Crystal Point has satisfied the requirement that it present prima facie evidence of the insolvency or bankruptcy of the parties that it claims were insured by Kinsale, and its claim under the statute may proceed. (pp. 20-22)

4.  The Court last considers whether Crystal Point's claim pursuant to the Direct Action Statute is subject to the arbitration provision in the relevant policies that Kinsale issued. The Direct Action Statute defines a judgment creditor's claim against the insolvent or bankrupt judgment debtor to be a claim "under the terms of the policy for the amount of the judgment in the action not exceeding the amount of the policy." N.J.S.A. 17:28-2. One of the "terms of the policy" at issue here is the arbitration clause, whose broad language mandates arbitration of any action brought by Nacamuli or Hawke against Kinsale. Under the statute's plain language, Crystal Point's rights against Kinsale are purely derivative of the rights that Nacamuli or Hawke could have asserted against Kinsale. The parties' disputes must be submitted to binding arbitration in accordance with the arbitration provisions. (pp. 22-24)

**REVERSED.  The order compelling arbitration is REINSTATED.**

**CHIEF JUSTICE RABNER; JUSTICES SOLOMON and PIERRE-LOUIS; and JUDGE FUENTES (temporarily assigned) join in JUSTICE PATTERSON's opinion.**

3

Crystal Point
Condominium
Association, Inc.,

Plaintiff-Respondent,

v.

Kinsale Insurance
Company,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
466 N.J. Super. 471 (App. Div. 2021).

| Argued | Decided |
|--------|---------|
| January 3, 2022 | July 18, 2022 |

Sean P. Mahoney argued the cause for appellant
(Kennedys CMK, attorneys; Sean P. Mahoney, of counsel
and on the briefs, and Michael E. DiFebbo, on the briefs).

John Randy Sawyer argued the cause for respondent
(Stark & Stark, attorneys; John Randy Sawyer, of counsel
and on the brief).

Kayla Elizabeth Rowe argued the cause for amici curiae
the Insurance Council of New Jersey and the New Jersey
Civil Justice Institute (Rowe Law, attorneys; Kayla
Elizabeth Rowe, of counsel and on the brief).

The Direct Action Statute authorizes an injured claimant holding an unsatisfied judgment against an insolvent or bankrupt policyholder to file a direct action against an insurer in certain settings. N.J.S.A. 17:28-2. That action must proceed "under the terms of the policy for the amount of the judgment in the action not exceeding the amount of the policy." Ibid.

In a construction defect case, plaintiff Crystal Point Condominium Association obtained default judgments against two entities that it contends are insolvent. Crystal Point alleges that defendant Kinsale Insurance Company insured the two entities for the construction claims brought here. It relies on insurance policies issued by Kinsale, each providing for binding arbitration of disputes arising from the policies.

After Crystal Point failed to recover on the default judgments, it brought a declaratory judgment and breach of contract action against Kinsale pursuant to the Direct Action Statute, demanding that Kinsale satisfy the judgments. Kinsale argued that the Direct Action Statute did not govern Crystal Point's claims. It asserted that even if the Direct Action Statute were held to apply, the statute's provision that the terms of the policy govern the action mandates that the parties' dispute be resolved in arbitration, not in a court proceeding.

2

The trial court concluded that the Direct Action Statute did not apply. It granted Kinsale's motion to compel arbitration and dismissed Crystal Point's complaint. The Appellate Division reversed the trial court's determination, authorized Crystal Point to assert claims against Kinsale under the Direct Action Statute, and ruled that the parties' dispute was not arbitrable. Crystal Point Condo. Ass'n, Inc. v. Kinsale Ins. Co., 466 N.J. Super. 471, 481-87 (App. Div. 2021).

We concur with the Appellate Division that Crystal Point may assert direct claims against Kinsale pursuant to the Direct Action Statute in the setting of this case. Based on the plain language of N.J.S.A. 17:28-2, however, Crystal Point's claims against Kinsale are derivative claims, and are thus subject to the terms of the insurance policies at issue, including the provision in each policy mandating binding arbitration of disputes between Kinsale and its insureds. Crystal Point's claims against Kinsale are therefore subject to arbitration.

Accordingly, we reverse the judgment of the Appellate Division and reinstate the trial court's order compelling arbitration of the parties' dispute.

3

I.

A.

1.

Kinsale is an excess and surplus lines insurer. It is undisputed that Kinsale issued Architects and Engineers Professional Liability insurance policies, effective from July 29, 2016 to July 29, 2018, that provided insurance coverage to Nacamuli Associates LLC, a structural engineering firm. Crystal Point alleges that Kinsale also provided insurance coverage to Hawke Inspections and Testing LLC, a construction inspection company, pursuant to an Architects and Engineers Professional Liability policy effective during the same policy period.

The relevant policies issued by Kinsale included the following language addressing the bankruptcy or insolvency of an insured:

SECTION VII - GENERAL CONDITIONS

A. Bankruptcy

Bankruptcy or insolvency of any "insured" or any "insured's" estate will not relieve us of our obligations under this Policy.

B. Legal Action Against Us

1. No action may be brought against us unless there has been full compliance with all of the terms of this Policy and the ultimate amount of the "insured's" responsibility has been finally

4

concluded either by a trial judgment against the "insureds" or by written agreement with the "insureds", all claimants, and us;

2. No person or organization has any right under this Policy to join us as party into any suit to determine the liability of any "insured".

The policies also contained an arbitration provision that identified the disputes to be arbitrated and set forth a procedure for the arbitration:

SECTION X - BINDING ARBITRATION

All disputes over coverage or any rights afforded under this Policy, including whether an entity or person is a 'named insured', an 'insured', an additional insured or, the effect of any applicable statutes or common law upon the contractual obligations owed, shall be submitted to binding Arbitration, which shall be the sole and exclusive means to resolve the dispute. Either party may initiate the binding arbitration.

The arbitration forum and process shall be agreed to by the parties. In the event the parties cannot agree on an arbitration forum and process, the matter shall be submitted to the American Arbitration Association. The Arbitration shall be before a panel of three arbitrators, unless the parties agree to one arbitrator, all of whom shall have experience in insurance coverage of the type afforded by this Policy. If the parties select a panel of three arbitrators, each party shall select an arbitrator and the chosen arbitrators shall select a third arbitrator. The American Arbitration Association shall decide any disputes concerning the selection of the Arbitrators. The potential arbitrators from which the arbitrators shall be selected shall not be confined to those provided by the American Arbitration Association. Each party shall bear the costs of its arbitrator and shall share equally the costs of the third

arbitrator and arbitration process. In the event of a single arbitrator, the cost shall be shared equally by the parties. The decision of the arbitration is final and binding on the parties.

2.

Crystal Point is a nonprofit corporation that manages, operates, and maintains the common elements of a high-rise residential building in Jersey City. After discovering what it alleges to be construction defects in the building, it filed an action against the contractors that it contended were responsible for those defects. Among the defendants named in Crystal Point's action were Nacamuli, which provided engineering and other services for the construction of the building, and Hawke, which served as a third-party inspector of the building's concrete balconies and slabs.

Crystal Point alleges that Nacamuli and Hawke put Kinsale on notice of the construction defect action and tendered their defenses, and that Kinsale declined to defend or indemnify either defendant. Neither Nacamuli nor Hawke filed an answer in Crystal Point's construction defect action.

Crystal Point sought and obtained default judgments against Nacamuli and Hawke. After a proof hearing, the trial court entered final judgment against Nacamuli in the amount of $874,400.86, and final judgment against Hawke in the amount of $859,965.01.

Crystal Point identified a Federal Tax Lien Number for Hawke and determined that Hawke was no longer in business, but it did not identify a Federal Tax Lien Number for Nacamuli. It obtained writs of execution against Nacamuli and Hawke and requested that sheriff's officers execute the writs.

B.

1.

Crystal Point filed a declaratory judgment action against Kinsale. It alleged that the insurance policies that Kinsale issued to Nacamuli and Hawke covered the claims asserted against them. Without invoking the Direct Action Statute in its complaint, Crystal Point alleged that it was entitled to recover the amounts owed by Nacamuli and Hawke under the insurance policies issued by Kinsale. It sought a declaration that the policies covered its claims against the policyholders, and that Kinsale was obligated to satisfy the judgments in accordance with those policies. Crystal Point also asserted a breach of contract claim against Kinsale, alleging that Kinsale had breached its obligations under the insurance policies by disclaiming coverage.

Kinsale filed a motion to compel arbitration and to stay the proceedings, asserting that Crystal Point's claims were subject to binding arbitration in accordance with the arbitration clauses in the insurance policies. Kinsale argued that the Direct Action Statute did not apply because Crystal Point had

not demonstrated that either Nacamuli or Hawke was insolvent or bankrupt. In the alternative, Kinsale contended that even if the Direct Action Statute were to apply, it would not preclude enforcement of the arbitration provisions in the policies.

Crystal Point opposed the motion. It asserted that the arbitration provisions did not apply to its claims and that the Direct Action Statute precluded enforcement of those provisions.

The trial court granted Kinsale's motion to compel arbitration but denied its motion to stay the proceedings. The court noted that as a general rule, insurance policies are enforced as written when clear and unambiguous, and that the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, expresses the Legislature's policy in favor of arbitration. The trial court held that the arbitration provisions in the insurance policies were clear and unambiguous and that they governed the dispute between Crystal Point and Kinsale. The court viewed the Direct Action Statute to be inapplicable because there was no evidence in the record before it that either Nacamuli or Hawke was insolvent or bankrupt.

The trial court ordered the parties to arbitrate their dispute and dismissed the complaint. It denied Crystal Point's motion for reconsideration but granted its unopposed motion to stay the order compelling arbitration pending appeal.

8

2.

Crystal Point appealed the trial court's judgment. The Appellate Division granted Crystal Point's motion to supplement the record with Affidavits of Service by Union County Sheriff's Officers indicating that they were unable to serve the writs of execution on Nacamuli or Hawke because, in each case, the "[c]ompany does not exist at this address."

The Appellate Division reversed the trial court's judgment. The appellate court considered the Affidavits of Service to constitute evidence that the writs of execution were unsatisfied, and it held that Crystal Point had met the Direct Action Statute's requirement that the claimant present proof of the insured's insolvency or bankruptcy. Crystal Point, 466 N.J. Super. at 480. The Appellate Division disagreed with Kinsale's contention that the Direct Action Statute applies only to accidents involving loss or damage to property caused by motor vehicles or animals. Id. at 481. It viewed the Direct Action Statute to authorize Crystal Point's claims against Kinsale. Id. at 480-82.

The Appellate Division also rejected Kinsale's contention that Crystal Point's claims were arbitrable by virtue of the statute's mandate that the direct action proceed "under the terms of the policy for the amount of the judgment in the action not exceeding the amount of the policy." Id. at 483 (quoting N.J.S.A. 17:28-2). The appellate court reasoned that Crystal Point is an

9

incidental beneficiary of the contract and "is the injured party with no contractual relationship with the insured or insurer and whose only means to collect its judgment against the now defunct insured is through the pathway afforded by legislative mandate." Id. at 484. The Appellate Division held that Crystal Point should not be burdened with "the alternate dispute resolution mechanism included in the policy by the insurer and consented to by the insured." Ibid. It "reject[ed] the notion that labeling a non-signatory claimant as a third-party beneficiary of an insurance contract compels arbitration" and concluded that the arbitration clause in Kinsale's insurance policies did not warrant the arbitration of Crystal Point's claims. Id. at 485-87.

The Appellate Division reinstated the complaint and remanded for further proceedings. Id. at 487.

3.

We granted Kinsale's petition for certification. 248 N.J. 10 (2021). We also granted Kinsale's motion to stay further proceedings in the trial court pending this Court's review of the appeal, as well as the application of the Insurance Council of New Jersey and the New Jersey Civil Justice Institute to participate as amici curiae.

10

II.

A.

Kinsale contends that the Direct Action Statute does not govern this case because Crystal Point made no prima facie showing that either Nacamuli or Hawke is insolvent or bankrupt and the Direct Action Statute applies only to accidents for property loss or damage from motor vehicles or animals. Kinsale argues that even if the Direct Action Statute applies, Crystal Point should be afforded no rights broader than the rights of Nacamuli and Hawke and that, pursuant to the arbitration clauses in the insurance policies, Crystal Point's coverage claims are arbitrable.

B.

Crystal Point asserts that the Appellate Division properly held that it proved that Nacamuli and Hawke are insolvent, thus meeting the requirements of the Direct Action Statute. It asserts that the Direct Action Statute is not limited to actions arising from property loss and damage caused by motor vehicles or animals. Crystal Point argues that it is an incidental beneficiary of the insurance policies, not a third-party beneficiary, and that the arbitration provisions in the insurance policies do not mandate the arbitration of its claims.

11

C.

Amici curiae the Insurance Council of New Jersey and the New Jersey Civil Justice Institute contend that a third-party beneficiary seeking to pursue claims under the Direct Action Statute is subject to all terms of the insurance policy that it seeks to enforce, including any arbitration provision.

III.

A.

This case turns on the construction of the Direct Action Statute, and our review is therefore de novo. See, e.g., Kocanowski v. Township of Bridgewater, 237 N.J. 3, 9 (2019).

Our goal in interpreting a statute "is to effectuate legislative intent." Gilleran v. Township of Bloomfield, 227 N.J. 159, 171 (2016). In that inquiry, "we look to the statute's language and give those terms their plain and ordinary meaning . . . because 'the best indicator of [legislative] intent is the plain language chosen by the Legislature.'" State v. J.V., 242 N.J. 432, 442-43 (2020) (quoting Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016)). "Absent a clear indication from the Legislature that it intended statutory language to have a special limiting definition, we must presume that the language used carries its ordinary and well-understood meaning." In re N.J.

Firemen's Ass'n Obligation, 230 N.J. 258, 274 (2017) (quoting State v. Lenihan, 219 N.J. 251, 262-63 (2014)).

"If the language is clear, the court's job is complete." In re Expungement Application of D.J.B., 216 N.J. 433, 440 (2014). It is only "when statutory language is ambiguous, or 'leads to more than one plausible interpretation'" that we "'may turn to extrinsic evidence, including legislative history, committee reports, and contemporaneous construction.'" Firemen's Ass'n Obligation, 230 N.J. at 274 (quoting DiProspero v. Penn, 183 N.J. 477, 492-93 (2005)).

B.

In general, "a stranger to an insurance policy has no right to recover the policy proceeds." Ross v. Lowitz, 222 N.J. 494, 512 (2015) (quoting Gen. Accident Ins. Co. v. N.Y. Marine & Gen. Ins. Co., 320 N.J. Super. 546, 553-54 (App. Div. 1999)). There are exceptions to that general rule, including certain assignments of rights that authorize a third party to assert a bad-faith claim against an insurer, ibid.; Murray v. Allstate Ins. Co., 209 N.J. Super. 163, 168-69 (App. Div. 1986), and third-party beneficiary status, which requires a showing that the contracting parties intended that a third party receive a benefit from the contract that may be enforced in court, Ross, 222 N.J. at 513; Broadway Maint. Corp. v. Rutgers State Univ., 90 N.J. 253, 259 (1982).

13

Crystal Point does not claim to be an assignee of a contractual right and denies that it is a third-party beneficiary of the insurance policies at issue. Its claim on appeal is premised on the Direct Action Statute, N.J.S.A. 17:28-2.

The Legislature enacted the Direct Action Statute in 1924. L. 1924, c. 153.[1] It amended the Act seven years after its enactment to mandate additional insurance policy language that is not relevant to the issues presented here. L. 1931, c. 194. The Legislature has not amended the Direct Action Statute since 1931.

The Direct Action Statute provides, in part, that

> [n]o policy of insurance against loss or damage
> resulting from accident to or injury suffered by an
> employee or other person and for which the person
> insured is liable, or against loss or damage to property
> caused by animals or by any vehicle drawn, propelled
> or operated by any motive power, and for which loss or

---

[1] The legislative history of the Direct Action Statute is sparse. Although the statute is "declaratory of public policy," Osborn v. New Amsterdam Cas. Co., 111 N.J.L. 358, 361 (E. & A. 1933), the Legislature did not explain its intent in enacting the law, L. 1924, c. 153. A leading commentator cited to New York's Direct Action Statute to explain that such statutes were intended to ameliorate the impact on tort claimants of laws, in effect at the time the statutes were enacted, that barred insolvent or bankrupt tortfeasors from access to the proceeds of their insurance policies. Robert E. Keeton, Basic Text on Insurance Law § 4.8(b), at 233-34 (1971); see also Northfield Ins. Co. v. Mount Hawley Ins. Co., 454 N.J. Super. 135, 148 (App. Div. 2018) (citing Keeton's analysis for the proposition that to protect tort claimants, "insurance policies -- usually by legislative direction -- later addressed insolvency and allow a victim to directly pursue an insurer once the claim is successfully adjudicated and without a need for the insured's cooperation").

14

damage the person insured is liable, shall be issued or delivered in this state by any insurer authorized to do business in this state, unless there is contained within the policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of the policy, and stating that in case execution against the insured is returned unsatisfied in an action brought by the injured person, or his personal representative in case death results from the accident, because of the insolvency or bankruptcy, then an action may be maintained by the injured person, or his personal representative, against the corporation under the terms of the policy for the amount of the judgment in the action not exceeding the amount of the policy.

[N.J.S.A. 17:28-2.]

In addition to notice and loss-of-services coverage provisions not relevant here, the Direct Action Statute further provides that

[a] policy issued in violation of this section shall, nevertheless, be held valid but be deemed to include the provisions required by this section, and when any provision in the policy or rider is in conflict with the provisions required to be contained by this section, the rights, duties and obligations of the insurer, the policyholder and the injured person shall be governed by the provisions of this section.

[Ibid.]

The Direct Action Statute thus mandates specific policy language in insurance policies both "against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person

15

insured is liable" and "against loss or damage to property caused by animals or by any vehicle drawn, propelled or operated by any motive power, and for which loss or damage the person insured is liable." Ibid.

The required policy language includes two provisions that are relevant to this appeal: (1) a provision that "the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of the policy"; and (2) a provision stating that if "execution against the insured is returned unsatisfied in an action brought by the injured person, or his personal representative in case death results from the accident, because of the insolvency or bankruptcy," then the injured person or that person's representative may bring an action "against the corporation under the terms of the policy for the amount of the judgment in the action not exceeding the amount of the policy." Ibid. Under the Direct Action Statute, if an insurance policy within the statute's reach lacks either provision, it will be "held valid but be deemed to include the provisions required by this section." Ibid. The Direct Action Statute thus "allow[s] a victim to directly pursue an insurer . . . without a need for the insured's cooperation." Northfield, 454 N.J. Super. at 148.

Case law has confirmed two requirements of the Direct Action Statute that are central to this appeal.

16

First, under the statute, "injured parties have no rights under the policy until there is an unsatisfied judgment against the assured." Kabinski v. Emps.' Liab. Assurance Corp., 123 N.J.L. 377, 379 (E. & A. 1939).  In accordance with the policy language prescribed by the Direct Action Statute, and the statutory language itself, an injured party has no claim under the statute absent proof "that the assured was insolvent or bankrupt, or that an execution was returned unsatisfied because of the insolvency or bankruptcy of the assured." Saxon v. U.S. Fid. & Guar. Co., 107 N.J.L. 266, 268 (E. & A. 1931).

Second, any claim brought under the Direct Action Statute is a claim "under the terms of the policy."  N.J.S.A. 17:28-2.  As this Court has noted with respect to actions brought pursuant to policy language mandated by the Direct Action Statute, "apart from the compulsory coverage under [N.J.S.A. 39:6-20(a)],"[2] the judgment creditor's rights "are purely derivative.  He stands in the shoes of the assured; and he sues in the right of the insured." Dransfield v. Citizens Cas. Co. of N.Y., 5 N.J. 190, 194 (1950).  Although an injured party asserting a claim under the statute "has no greater right under the policy

---

[2] The statute cited, the Motor Vehicle Financial Responsibility Act, provided that when an insurance policy exceeded $5,000 in coverage, the insurance carrier could "plead against the judgment creditor with respect to the excess liability any defenses pleadable against the insurer." Dransfield v. Citizens Cas. Co. of N.Y., 5 N.J. 190, 194 (1950).  That statute was later repealed by L. 1952, c. 1973.

17

than has the assured," that party "has 'a cause of action the moment he is injured' which ripens into a right of action when he recovers a judgment against the assured whose insolvency is proved by the return of an execution unsatisfied." Ibid.

## C.

This appeal requires that we resolve three questions regarding the Direct Action Statute: (1) whether the statute applies only to claims arising from "loss or damage to property caused by animals or by any vehicle drawn," N.J.S.A. 17:28-2, or to a broader category of claims that includes Crystal Point's claims; (2) whether Crystal Point's showing that its writs could not be executed constitutes prima facie proof of "the insolvency or bankruptcy of the person insured" under N.J.S.A. 17:28-2; and (3) whether Crystal Point's action under N.J.S.A. 17:28-2 must be determined in binding arbitration rather than in court pursuant to the arbitration provision set forth in the insurance policies. We consider each in turn.

## 1.

Kinsale contends that the Direct Action Statute applies only to insurance for claims arising from loss or damage caused by animals or motor vehicles. We disagree.

By its plain terms, the Direct Action Statute applies to either (1) coverage for claims "against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable"; or (2) coverage for claims "against loss or damage to property caused by animals or by any vehicle drawn, propelled or operated by any motive power, and for which loss or damage the person insured is liable." N.J.S.A. 17:28-2.  As confirmed by the Legislature's use of the disjunctive "or" between the two clauses and its inclusion of the term "against" in each clause, the two categories are separate and distinct.  Nothing in the statutory text suggests legislative intent to limit the statute's reach to the second category, claims arising from loss or property damage caused by motor vehicles or animals.  See N.J.S.A. 17:28-2.

Nor is there any indication in the case law applying the Direct Action Statute that the statute applies only to such claims.

A majority of the decisions addressing the statute arise from claims based on motor vehicle accidents.  See, e.g., Feuchtbaum v. Constantini, 59 N.J. 167, 177 (1971); Cooper v. Gov't Emps. Ins. Co., 51 N.J. 86, 88 n.1, 94-95 (1968); Dransfield, 5 N.J. at 192, 194-95.  The case law is not limited to motor-vehicle or animal-related injury settings, however.  In Burd v. Sussex Mutual Insurance Co., this Court considered the question whether the insured's

19

homeowner's policy was required to defend a claim arising from the homeowner's shooting of a victim on the insured property. 56 N.J. 383, 386-87 (1970). Noting that the victim had been named as a party to the coverage action, the Court held that "[b]y statute, N.J.S.A. 17:28-2, an injured claimant has an interest in a liability policy, and is entitled to be heard as to coverage." Id. at 397 (citation omitted). As Burd illustrates, the plain language of N.J.S.A. 17:28-2 mandates insurance policy terms that apply even when judgment creditors seek proceeds from policies covering claims based on injuries other than those caused by motor vehicles or animals.

This case is clearly an action by a judgment creditor seeking the proceeds of insurance policies for claims arising from "loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable." N.J.S.A. 17:28-2. Accordingly, the Direct Action Statute governs this appeal.

2.

We next address the Direct Action Statute's mandate that an injured party prove "the insolvency or bankruptcy of the person insured" as a prerequisite to maintaining an action under the statute. N.J.S.A. 17:28-2; Dransfield, 5 N.J. at 194; Kabinski, 123 N.J.L. at 379.

20

Based on the record before it, which contained no proof that Crystal Point's default judgments could not be satisfied, the trial court properly concluded that Crystal Point had not presented prima facie evidence of the insolvency of Nacamuli or Hawke. However, on appeal, Crystal Point filed a motion to supplement the record with proof that the writs of execution were returned unsatisfied. After granting the motion, the Appellate Division held that Crystal Point had presented prima facie evidence that the insureds were insolvent and that, in the absence of contradictory evidence, Crystal Point's judgments were deemed unsatisfied. Crystal Point, 466 N.J. Super. at 480 (citing Universal Indem. Ins. Co. v. Caltagirone, 199 N.J. Eq. 491, 494 (E. & A. 1936)).

We concur with the Appellate Division that based on the supplemented record before it, the Affidavits of Service by Union County Sheriff's Officers, showing that the writs of execution were returned unsatisfied, constituted prima facie evidence that Nacamuli and Hawke are insolvent. See Dransfield, 5 N.J. at 194 (noting that under N.J.S.A. 17:28-2, the insured's insolvency "is proved by the return of an execution unsatisfied"); Caltagirone, 199 N.J. Eq. at 494 (holding that an "unsatisfied execution is prima facie evidence" of the "insolvency of the insured"). To date, Kinsale has presented no evidence to counter Crystal Point's showing of insolvency.

21

Accordingly, Crystal Point has satisfied the Direct Action Statute's requirement that it present prima facie evidence of the insolvency or bankruptcy of the parties that it claims were insured by Kinsale, and its claim under the statute may proceed.

3.

Finally, we review the Appellate Division's holding that Crystal Point's claim pursuant to the Direct Action Statute is not subject to the arbitration provision in the relevant insurance policies that Kinsale issued.

The Appellate Division found no evidence that when Nacamuli, Hawke, and Kinsale agreed to arbitrate disputes arising from the insurance policies, they expressed the intent that a judgment creditor of Nacamuli or Hawke would be subject to those arbitration provisions. Crystal Point, 466 N.J. Super. at 481-87. Relying on this Court's opinion in Hirsch v. Amper Financial Services, LLC, 215 N.J. 174, 187 (2013), the appellate court reasoned that although "a non-signatory to an arbitration agreement might be compelled to arbitrate based on principles of agency or other legal theories," no such theory applied here. Id. at 484-86. The court stated that it was "not satisfied that the third-party beneficiary status accorded to plaintiff by the [Direct Action Statute] means binding arbitration is a predetermined sequela of that status when the claim is considered against the canvas of our arbitration

22

jurisprudence." Id. at 486. It therefore declined to enforce the insurance policies' arbitration provisions. Id. at 481-87.

We disagree. The claim at issue in this appeal is a statutory claim pursuant to the Direct Action Statute, not a common-law claim. See N.J.S.A. 17:28-2. The statute defines a judgment creditor's claim against the insolvent or bankrupt judgment debtor to be a claim "under the terms of the policy for the amount of the judgment in the action not exceeding the amount of the policy." Ibid. One of the "terms of the policy" at issue here is the arbitration clause, which prescribes binding arbitration of "[a]ll disputes over coverage or any rights afforded under this [p]olicy, including . . . the effect of any applicable statutes . . . upon the contractual obligations owed." That broad language mandates arbitration of any action brought by Nacamuli or Hawke against Kinsale.

Under the statute's plain language, Crystal Point's rights against Kinsale are "purely derivative" of the rights that Nacamuli or Hawke could have asserted against Kinsale. Dransfield, 5 N.J. at 194; see also Burd, 56 N.J. at 397 (stating that a claimant's interest under N.J.S.A. 17:28-2 "is derivative of the insured's (absent a statute providing otherwise)"). The Appellate Division's decision, however, would grant Crystal Point greater rights than the rights that Nacamuli or Hawke could have asserted against Kinsale. Were we

23

to concur with the Appellate Division that in contrast to the other provisions of the insurance policies, the arbitration clause is somehow unenforceable in Crystal Point's action, we would contravene the Direct Action Statute's plain terms.

Accordingly, we hold that Crystal Point's claim pursuant to the Direct Action Statute is subject to the arbitration provisions of the relevant insurance policies. The parties' disputes must be submitted to binding arbitration in accordance with those provisions.

## IV.

The judgment of the Appellate Division is reversed, and the trial court's order compelling the binding arbitration of Crystal Point's claims against Kinsale is reinstated.

CHIEF JUSTICE RABNER; JUSTICES SOLOMON and PIERRE-LOUIS; and JUDGE FUENTES (temporarily assigned) join in JUSTICE PATTERSON's opinion.

24