**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4526-18T3

BOB MEYER COMMUNITIES,
INC.,

     Plaintiff-Appellant,

v.

OHIO CASUALTY INSURANCE
COMPANY, and AMERICAN FIRE
AND CASUALTY COMPANY,

     Defendants-Respondents,

and

HARLEYSVILLE INSURANCE
COMPANY,

     Defendant.

_____

          Argued telephonically September 14, 2020 –
          Decided October 5, 2020

          Before Judges Messano and Smith.

          On appeal from the Superior Court of New Jersey, Law
          Division, Burlington County, Docket No. L-1750-16.

Ryan Milun argued the cause for appellant (The Killian Firm, PC, attorneys; Ryan Milun, on the briefs).

John T. Coyne argued the cause for respondents (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; John T. Coyne, on the brief).

PER CURIAM

This dispute is before us for a third time. Plaintiff was the general contractor for several homes that suffered water infiltration and damages after construction. Bob Meyer Cmtys., Inc. v. James R. Slim Plastering, Inc., No. A-5581-12 (App. Div. July 21, 2015) (slip op. at 2) (hereinafter Bob Meyer I).[1] Defendants American Fire and Casualty Company and Ohio Casualty Insurance Company issued plaintiff three commercial general liability (CGL) insurance policies that provided coverage between May 2001 and July 2004. The homeowners filed suit against plaintiff, who sought defense and indemnification from defendants. Defendants denied coverage, and the trial court concluded "there was no 'property damage' caused by an 'occurrence,' as defined by the

---

[1] Although citing an unpublished opinion is generally forbidden, we do so here to provide a full understanding of the issues presented and pursuant to the exception in Rule 1:36-3 that permits citation "to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law[.]" See Badiali v. N.J. Mfrs. Ins. Grp., 429 N.J. Super. 121, 126 n.4 (App. Div. 2012), aff'd, 220 N.J. 544 (2015).

policies." Id. at 3. We reversed the trial court's grant of summary judgment to defendants. Id. at 8.

In doing so, we relied upon our then recent decision in Cypress Point Condominium Ass'n v. Adria Towers, LLC, 441 N.J. Super. 369 (App. Div. 2015), to find that damages allegedly caused by a subcontractor's faulty workmanship could constitute an "occurrence" resulting in "property damage" that was covered by the policies. Bob Meyer I, at 3–6. We specifically "d[id] not decide whether plaintiff [was] ultimately entitled to insurance coverage under the policies[,]" noting that "[o]n remand, defendants may raise . . . arguments . . . to show 'that plaintiff's claims are otherwise excluded under the terms of the policy.'" Id. at 7 (quoting Cypress Point, 441 N.J. Super. at 375).

Recognizing that it "ha[d] never addressed questions of coverage for consequential damages caused by faulty workmanship under the . . . standard form CGL polic[ies]" at issue, the Court subsequently affirmed our judgment in Cypress Point. Cypress Point Condo. Ass'n v. Adria Towers, LLC, 226 N.J. 403, 421, 432 (2016).

> We . . . hold that the consequential damages caused by the subcontractors' faulty workmanship constitute "property damage" and the event resulting in that damage—water from rain flowing into the interior of the property due to the subcontractors' faulty

A-4526-18T3

> workmanship—is an "occurrence" under the plain language of the CGL policies at issue here.
>
> [Id. at 408 (quoting Cypress Point, 441 N.J. Super. at 376).]

In the interim, faced with defendants' denial of coverage, plaintiff settled claims made by seven individual homeowners and sought to recover defense costs and indemnification from defendants. Bob Meyer Cmtys., Inc. v. Ohio Cas. Ins. Co., No. A-2171-17 (App. Div. May 25, 2018) (slip op. at 2–3) (hereinafter Bob Meyer II). Because multiple insurance policies, including one issued by Harleysville Insurance Company, were implicated, the timing of any "occurrence" and the nature and cause of any damages became critical in determining coverage under defendants' policies, and defendants successfully barred plaintiff's expert's opinion on those issues as a net opinion.[2] Bob Meyer I at 4–6.

We granted plaintiff leave to appeal and again reversed the Law Division. Bob Meyer II at 9–10. We concluded that although the expert's opinion about when the homes' external sheathing became non-functional was a "net opinion[,]" "there [was] no reason to limit [the expert's] testimony about other

---

[2] We are advised that plaintiff settled with Harleysville Insurance Company, a defendant in the original declaratory judgment action.

damage that occurred to the sheathing or any part of an exterior wall system in any of the subject homes, and when such damage took place." Ibid.

Plaintiff and defendants thereafter filed motions for summary judgment. Among other things, plaintiff sought a declaration that "all of [defendants'] policies . . . [were] triggered for coverage," and "there was property damage caused by an occurrence within [defendants'] policy periods." Plaintiff also sought reimbursement "for the reasonable settlements it entered into with the homeowners . . . [totaling] $994,490." Relying primarily on Griggs v. Bertram, 88 N.J. 347, 364 (1982), plaintiff contended that because defendants "wrongfully refused coverage[,]" causing plaintiff to defend itself against claims covered by the policy and ultimately settle those claims, defendants were liable for the entire settlement amounts if they were "reasonable and . . . made in good faith[.]"

In a thorough oral decision, the judge granted in part and denied in part plaintiff's motion. Relying on our decision in Air Master & Cooling, Inc. v. Selective Insurance Co. of America, 452 N.J. Super. 35 (App. Div. 2017), she concluded that defendants' policies were implicated and their coverage

triggered.[3] However, declining to "read <u>Griggs</u> quite as broadly as plaintiff[,]" the judge concluded there were material factual disputes as to the reasonableness of the settlements, both as to the "various liabilities of the insurers[,]" and whether defendants were "entitled to a diminution of" their share of the settlements "based on covered claims as opposed to uncovered claims." Plaintiff moved for reconsideration, which the judge denied in an oral opinion.

Thereafter, the parties entered into a "high-low" settlement agreement. Pursuant to a June 12, 2019 consent order for judgment, plaintiff reserved the right to appeal the summary judgment and reconsideration orders "to the extent those orders permit[ted defendants] to seek substantive and temporal allocation of [defendants'] coverage obligations," and, hence, defendants' indemnification obligations for the settlements plaintiff entered into with the homeowners. Pursuant to the consent judgment, if we affirm the judge's ruling in whole or in part, defendants must pay the lower amount to plaintiff, and if we reverse the ruling in its entirety, defendants must pay plaintiff the higher amount.

---

[3] In <u>Air Master</u>, we held that "a 'continuous trigger' theory of insurance coverage may be applied . . . to third-party liability claims involving progressive damage to property caused by an insured's allegedly defective construction work[,]" and "the 'last pull' of that trigger—for purposes of ascertaining the temporal end point of a covered occurrence—happens when the essential nature and scope of the property damage first becomes known, or when one would have sufficient reason to know of it." 452 N.J. Super. at 38.

Plaintiff describes the appeal as asking us to decide a purely legal question: "the single issue for consideration . . . is what are [defendants'] coverage obligations related to the settlements entered by [plaintiff] with the various homeowners." In other words, having denied coverage, must defendants pay the full settlement amounts if reasonable and entered in good faith? Or, despite their denial of coverage under the policies, are defendants entitled to an allocation determination, both temporally and substantively, i.e., whether the homeowners' claims were for "property damage" covered under the policies? We conclude plaintiff misconstrues longstanding precedent and affirm.[4]

"Neither the duty to defend nor the duty to indemnify 'exists except with respect to occurrences for which the policy provides coverage.'" Wear v. Selective Ins. Co., 455 N.J. Super. 440, 455 (App. Div. 2018) (quoting Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 22 (1984)). "By permitting the dispute of uncovered claims, courts protect both parties by ensuring that the insurer does not incur responsibility for uncovered claims, and that the insured is entitled to both defense and indemnity if the dispute is

---

[4] A consent judgment is generally not appealable. Winberry v. Salisbury, 5 N.J. 240, 255 (1950). However, our review of an interlocutory order may be permitted as of right if an "economic stake" hinges on resolution of the appeal, see Janicky v. Point Bay Fuel, Inc., 410 N.J. Super. 203, 207 (App. Div. 2009), as it does in this case.

A-4526-18T3

resolved in its favor." Passaic Valley Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co., 206 N.J. 596, 617 (2011) (citing N.J. Mfrs. Ins. Co. v. Vizcaino, 392 N.J. Super. 366, 370 (App. Div. 2007)).

Before us, as it did before the motion judge, plaintiff relies upon Griggs. There, "[t]he principal issue . . . [was] whether the insurance carrier, having failed for a substantial period of time to notify its insured of the possibility of noncoverage, was estopped to deny coverage of the claim against its insured." Griggs, 88 N.J. at 355. The Court held that "[u]nreasonable delay in disclaiming coverage, or in giving notice of the possibility of such a disclaimer, even before assuming actual control of a case or a defense of an action, can estop an insurer from later repudiating responsibility under the insurance policy." Id. at 357.

After concluding that the insurer had unreasonably delayed informing its insured that it was denying coverage, the Court addressed "whether [the insurer] is responsible under the policy for the payment of the settlement between [the third-party claimant and the insured] since [the insurer] did not participate in the settlement negotiations." Id. at 364. The Court reiterated:

> Where an insurer wrongfully refused coverage and a defense to its insured, so that the insured is obliged to defend himself in an action later held to be covered by the policy, the insurer is liable for the amount of the judgment obtained against the insured or of the settlement made by him. The only qualifications to this

> rule are that the amount paid in settlement be reasonable and that the payment be made in good faith.
>
> [Ibid. (quoting Fireman's Fund Ins. Co. v. Sec. Ins. Co. of Hartford, 72 N.J. 63, 71 (1976).]

The Court concluded that even though the personal injury action against its insured "was not one later found to be covered by the policy," the insurer was "estopped on equitable grounds from denying policy coverage[.]" Ibid.

Plaintiff seizes on the language we block quoted above and claims that defendants were obligated to provide full reimbursement for the settlements plaintiff reached with the affected homeowners, subject only to a judicial determination that the settlements were reasonable and entered in good faith. However, plaintiff fails to realize the narrow holding in Griggs. Unlike the insurer in Griggs, defendants here issued a timely denial of coverage citing specific provisions of the policies upon which the decision was based. Defendants were initially successful in their argument, leading to a grant of summary judgment. In Bob Meyer I, we specifically left open the issue of whether there was, in fact, coverage under the policies. In short, there was no basis to apply equitable principles of estoppel to bar defendants' challenge to coverage, including a temporal and substantive allocation of covered and uncovered claims. See Wear, 455 N.J. Super. at 458 ("[A] good-faith challenge

to coverage is not a breach of an obligation to defend." (citing Passaic Valley, 206 N.J. at 617)). Defendants were entitled "to dispute coverage based upon the language" of the policies. Ibid. (citing Vizcaino, 392 N.J. Super. at 369–70).

Absent any equitable reason to bar defendants from asserting contractual coverage defenses, plaintiff was required to prove not only that defendants wrongfully denied coverage for the homeowners' damage claims, but also that those claims were covered under the terms of the policy. See Polarome Int'l, Inc. v. Greenwich Ins. Co., 404 N.J. Super. 241, 275 (App. Div. 2008) ("[I]f there is a factual dispute that, once resolved, may indicate that an occurrence is not covered, and it is unlikely to be resolved at trial, an insurer may deny coverage and await judicial resolution." (citing Heldor Indus., Inc. v. Atl. Mut. Ins. Co., 229 N.J. Super. 390, 399 (App. Div. 1988))). Resolution of that issue in plaintiff's favor would mean that defendants' obligations under the insurance contract would translate into reimbursing plaintiff for its costs and the settlement amounts, assuming they were reasonable and entered in good faith. Vizcaino, 392 N.J. Super. at 370 (citing Burd v. Sussex Mut. Ins. Co., 56 N.J. 383, 388–90 (1970)).

Plaintiff claims in a footnote that the motion judge decided defendants wrongfully denied coverage, citing a single sentence she uttered in her oral

decision denying reconsideration. We disagree with that interpretation. Reading the judge's initial decision in its entirety, including the quotations we noted above, it is quite clear she found that plaintiff had not proven, as a matter of fact and law, that defendants had no defense to plaintiff's claims and wrongfully denied coverage, at least with respect to damages attributable to covered versus uncovered claims. As a result, after settling the case, plaintiff filed this appeal specifically challenging the judge's denial of its summary judgment motion and subsequent reconsideration motion.[5]

When reviewing the grant of summary judgment, we apply the "same standard as the motion judge." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). That standard mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224

---

[5] Denial of summary judgment is interlocutory and not appealable of right, because the denial of summary judgment "decides nothing and merely reserves issues for future disposition." Gonzales v. Ideal Tile Importing Co., 371 N.J. Super. 349, 356 (App. Div. 2004). However, plaintiff sought leave to appeal on an interlocutory basis and a panel of our colleagues denied that request.

N.J. 189, 199 (2016) (quoting R. 4:46-2(c)). Most importantly for the purposes of this appeal,

> when the movant is the plaintiff, the motion court must view the record with all legitimate inferences drawn in the defendant's favor and decide whether a reasonable factfinder could determine that the plaintiff has not met its burden of proof. If a reasonable factfinder could decide in the defendant's favor, then the plaintiff has not demonstrated that it is "entitled to a judgment or order as a matter of law" and the court must deny the plaintiff's summary judgment motion.
>
> [Globe Motor Co., 225 N.J. at 481 (citations omitted) (quoting R. 4:46-2(c)).]

As already noted, defendants were well within their rights to contest the coverage issues. Here, we agree entirely with the motion judge's assessment of the record. Although defendants never produced an expert, there were disputed facts as to the nature, extent and timing of the damages caused by water infiltration of the homes at issue. The facts were properly left for a factfinder to conclusively resolve. Resolution of those factual issues was necessary to determine coverage under the policies, and as a result, whether defendants' denial of coverage was wrongful. Under controlling precedent and the facts of this case, only defendants' wrongful denial of coverage would translate into a duty to reimburse plaintiff for reasonable settlements it entered into with the homeowners in good faith.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4526-18T3